## Wilson *v.* Strayhorn.

Misrepresentation.—Every misrepresentation will not avoid a contract—the fact or thing misrepresented, must be of such a character that the party deceived *had a right to rely upon it.*

Misrepresentations, to be fraudulent, must be *material,* must mislead the party to his damage, and must be *false.*

A party upon whom fraud has been practiced, must be prompt in communicating it when discovered.

What required of contracting parties.—The law requires contracting parties to be vigilant and to exercise due caution, and if the means of information are alike accessible to both, so that with ordinary prudence and diligence the parties might respectively rely upon their own judgments, they must be presumed to have done so.

Mistake.—Where the mistake is *mutual,* courts of equity will *correct,* but *not make* a new contract.

*Appeal from Yell Circuit Court.*

Hon. William N. May, Circuit Judge.

*Clark & Williams,* for appellant.

Strayhorn delivered the whole without explanation, and he cannot be heard to say that Wilson did not purchase the whole or contract for it; and he is bound to make good the whole. This act of delivery shifts the whole onus upon Strayhorn. Even where a man stands by and sees another purchase lands which belong to himself and says nothing, he is afterwards estopped from setting up his title. *Shall v. Biscoe, 18 Ark. 142; Trapnall et al. v. Burton et al. 24 Ark. 371.*

The doctrine of *caveat emptor* does not apply here. *Long on Sales, 129-30; Hall v. Gray, 1 Stark 434; Speuglemeyer v. Crawford, 6 Paige, 254; 1 Story Eq. sec. 200-206; 2 Kent, 481, 491.* In such case the seller is required to tell the truth. *Doggett v. Emerson, 3 Story R. 733:* see also, *1 Story Eq. secs. 193, 204, 206-7-8-9-10, 141-2-3 and 144; Richardson v. Blight, 8 B Monroe, 580; Calruly v. Williams, 1 Ves. Jr. 210, 211.*

*English, Gantt & English,* for appellee.

We submit that, even though Strayhorn did represent to Wilson that he owned all the lands in his enclosure, Wilson would be entitled to no recoupment on account of such misrepresentation, because the streets, alleys, courts, etc., of the town were public matters, open to inspection, observation and inquiry as well to Wilson as to Strayhorn, and not matters within the peculiar knowledge of Strayhorn. See *Smith v. Richards, 13 Peters R. 35; Hill v. Bush, 19 Ark. 529; Yeates v, Pryor, 6 Eng. R. 66,* and cases there cited.

Even if the streets, alleys and courts of the town had been properly dedicated to public use, when the town was laid out, which does not appear in the record, yet part of them being enclosed with lots, purchased and openly held, possessed and used as part of his premises by Strayhorn, for more than the longest period of limitation ever prescribed by any statute of this State, he acquired a perfect legal title to the ground, so

enclosed and held, as against the corporation and all others. *Cunningham v. Brumback, 23 Ark. 336; Hicks v. Fluit, 21 Ark. 463; Walker v. Town, 23 Ark. 147; Bowman v. Wathen, 1 How. U. S. 189; Angel on Limitations, Title, Adverse Possession, and particularly sections 383, 393.*

We respectfully submit that, in any view, the decree of the court below should be affirmed.

McCLURE, J.

Strayhorn sold to Wilson lots 1, 3, 5, 7, 17, 19, 21, 23 and 25, in block eight, in the town of Dardanelle, for $2,200 ; seven hundred dollars of this amount was paid on the 16th of March, 1867, and the note of Wilson for $1,500, due January 1, 1868, was executed and delivered to Strayhorn, who executed a title bond, binding himself to make a good and sufficient deed, in fee simple for the lots above described, upon the payment of the purchase money.

Wilson went into possession of the property, and has so continued until the present time. Failing to meet the note at maturity, Strayhorn, in September of 1868, filed his bill asking a decree for the purchase money, and a foreclosure of the equity of redemption held by Wilson.

To the bill Wilson filed an answer and cross bill, wherein he sets up that the property purchased from Strayhorn was inclosed by a fence; that he was a stranger in the country and unacquainted with the size of town lots, and was led to believe, from the statements and action of Strayhorn, that the lots described in the title bond, in extent, were equal to the whole amount of ground inclosed by the fence of Strayhorn ; that he now finds such is not the fact, and that a portion of the ground within the inclosure is public ground of the town of Dardanelle; that certain repairs Strayhorn had verbally promised to make, have not been made, and concludes with a prayer that he may be allowed a credit on said note for the deficit of land within the inclosure purchased of Strayhorn,

on account of certain alleys and courts that he now finds belong to the town of Dardanelle, and for certain improvements that have not been made.

At the hearing the court below rendered a decree against Wilson for $1,513, foreclosed the equity of redemption, and ordered the property sold in default of payment. From this decree Wilson appealed to this court.

It is a well settled principle of the law that fraud must be charged, and not left to inference. The allegation in the cross bill is "that he (Wilson) was informed by Strayhorn that he owned all the *lots* within his inclosure ; that Strayhorn distinctly stated that the whole inclosure belonged to him, and was divided into nine lots; that the courts and alleys within the inclosure, belonging to the town of Dardanelle, constituted about three-twelfths of the property inclosed.

There is no allegation in the cross bill that this statement was falsely or fraudulently made, with an intent to deceive, or that it did deceive the appellant in this case. In order to vitiate a contract for fraud, the representation must have been *material*—not only material, but it must have *misled* the other party to his damage and injury; and, in addition to this, the statement must have been *false*. It is not every misrepresentation that will avoid a contract. The fact or thing misrepresented must be of such a character that the deceived party had a *right to rely upon it.* The law requires each contracting party to be vigilant, and exercise a due degreee of caution.

In *Yeates v. Pryor, 11 Ark., 58,* this court held that if the means of information are alike accessible to both, so that with ordinary prudence or vigilance the parties might respectively rely upon their own judgments, they must be presumed to have done so; or, if they have not so informed themselves, must abide the consequences of their own inattention and carelessness.

Strayhorn, in his answer to the cross bill, denies representing to Wilson that he owned any land within said inclosure, except the said nine lots, as they are represented on the map

of said town, and described in the title bond.   There is no allegation in the cross bill that Wilson was misled by the statement of Strayhorn, or that he believed or relied on the same; if he did not, no fraud could have been practiced upon him.

The introductory or prefatory statement in Wilson's bill, that he was a stranger in the country, and had no knowledge of the size of town lots, is not such an averment as would excuse him from seeking such information as was accessible to a man of ordinary prudence and vigilance, nor is it such an averment as would authorize Wilson to rely implicitly upon the statements and representations of Strayhorn.

All towns have streets and alleys.   The citizen of one State is as much presumed to know this as the citizen of another, and that the lots are not always uniform in size throughout a State.   Strayhorn was not bound to communicate any fact to Wilson that an ordinary man, in the usual course of trade and business, would naturally look to.   If a man of ordinary business tact and prudence would have inquired as to the location of streets, courts and alleys in a strange town, before making a purchase, then Wilson would be bound by the rule.

In our opinion, a man of ordinary prudence would feel some interest in knowing something about the streets, courts and alleys contiguous to his property.

There is another matter connected with this question of fraud that it may be well to look to, and that is, that the party on whom a fraud has been practiced must be prompt in communicating it when discovered.

Wilson went into the possession of the property, purchased in March, 1867, and has been continuously in possession since. On the first of April, 1868, more than a year after he went into possession, he paid Strayhorn $117 on the $1,500 note, but said nothing about being misled or deceived as to the quantity of land purchased.   Wilson states that at the time Strayhorn came to him for the six or seven hundred dollars, that he knew of the deficit of land for which he now claims a deduction, but that he said nothing about it to Strayhorn.   He also

admits that he offered, and was willing to borrow the money and pay the note if Strayhorn could tell him where the money could be borrowed.

Wishard, another witness, states that he had the note for collection, and about one month before the bringing of the suit, he called upon Wilson and wanted him to pay the note; that Wilson did not say anything about a deficit of land on account of the court and alleys, but did say something about troughs not being made as Strayhorn had promised, and offered to pay the note if Wishard could tell him where he could borrow the money.

It strikes us as being somewhat strange that Wilson would mention the fact that the troughs had not been finished as Strayhorn promised, and not say anything about having been misled or deceived as to the quantity purchased, especially at a time when Wishard was urging the payment of the note given for the property, and threatening to sue.

The first notice that Strayhorn received that he had practiced a fraud on Wilson, is found in the answer and cross bill of the appellant. A period of twenty months after the purchase, and during all which time the appellant was in possession of the premises, he says nothing about being defrauded. It seems, too, that he has not shown any promptness in communiciating the fraud, if one was perpetrated upon him.

Wilson alleges that within the inclosure made by Strayhorn's fence there are forty-eight thousand and thirty-two square feet, and that twelve thousand three hundred and ninety-two feet of this amount is public ground of the town of Dardanelle, and to this extent there is, not fraud, but a failure, of consideration. For aught that appears in the record, Wilson would have purchased the property if he had known of the existence of the court and alleys within the inclosure.

Strayhorn, in most emphatic terms, denies all fraud, and there is no proof to sustain the charge; he insists that he was only selling the *lots* within the inclosure. On the other hand,

Wilson alleges that he understood he was buying all the ground inclosed by the fence.

Both men might have been honestly mistaken as to the meaning of the other. Such a mistake is no ground for the reformation of this contract. For, while it may be true that Wilson would not have purchased the property if he had known of the existence of the court and alleys within the inclosure; it may be equally true that Strayhorn, knowing of the existence of the streets and alleys, would not have parted with his property for less than twenty-two hundred dollars. Under such circumstances a reformation of this contract or sale would, in reality, be the making of a new contract by the court, to which the minds of neither party ever consented. Such is not the province of a court of equity. In cases where the mistake is mutual, a court has the power to reform a contract, but this is not the fact in this instance.

The attention of neither of the parties, at the time of making the sale, seems to have been called to the question of streets and alleys. It was no more the duty of Strayhorn to mention them than it was of Wilson to inquire after them. The neglect, or rather the result of a neglect, must be borne by the party who had it in his power to have provided against it by the exercise of ordinary diligence.

The judgment of the Yell county circuit court is affirmed.