## PEKIN COOPERAGE COMPANY *v*. GIBBS.

### Opinion delivered October 26, 1914.

1. ACCORD AND SATISFACTION—DISPUTED CLAIM—INTENTION OF THE PARTIES.—Where a claim between certain parties is in dispute, and the debtor tenders a certain amount in full satisfaction of the debt, and it was so understood by the parties, an acceptance of the amount and an appropriation thereof by the creditor will constitute an accord and satisfaction.

2. ACCORD AND SATISFACTION—ACT OF AGENT—RATIFICATION.—Where an agent without authority receives a payment in accord and satisfaction of a demand owing his principal, and the principal receives from the agent and appropriates the money so paid, with knowledge of the transaction, the principal will be held to have ratified the act of the agent.

3. ACCORD AND SATISFACTION—RESCISSION—CONDITION PRECEDENT.—As a condition precedent to the rescission of an accord and satisfaction, or a release, where the accord was made or the release given as the result of fraud practiced in their procurement, the consideration must be returned or tendered before the suit can be maintained.

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; reversed.

Appellees, C. D. Gibbs and the Arkadelphia Milling Company, commenced suit on the 7th day of July, 1913, against the appellant, in which they alleged the existence of an indebtedness on account of white oak staves sold and delivered by them to the defendant of the value of $450. This complaint was amended by alleging that the milling company, which actually made the contract with the defendant for the sale of the staves sued for, sold them as agent for its co-plaintiff, Gibbs, and that the milling company was acting as a broker for Gibbs and, as such broker, sold the staves to the defendant.

Appellant answered, and denied owing any indebtedness to the plaintiffs, and alleged the facts to be that on February 8, 1913, it purchased from the milling company a car of white oak wine staves, to be manufactured according to jointing instructions, to be primed, cleaned and freshly planed on one side, or heavy enough to plane on top to thickness of full eleven-sixteenths of an inch, and that when said staves were delivered they were found not to have been manufactured according to the specifications, whereupon defendant proposed by wire to the milling company to handle and rejoint the staves at plaintiff's expense and to settle for the staves when this service had been performed, and that the milling company accepted this offer, and that agreement was carried into effect. That on March 24, 1913, appellant mailed to the milling company a statement of a balance due, showing that amount to be $72.56, and this letter advised that "check herewith in full settlement." That the check referred to was received in full payment, was cashed by the milling company, and the same was in full payment for the car of staves sued for and was, in effect, an accord and satisfaction of the demand sued on in this action. That appellant, in pur-

chasing the staves from the milling company, did not know of its agency, but dealt with it as the owner, and denied that it was, in fact, the mere agent or broker of appellee, Gibbs, and it plead this settlement in bar of the plaintiffs' cause of action.

At the trial there was a conflict in the evidence concerning the condition of the staves at the time of their receipt by appellant; but there was evidence from which the jury might have found, as it did find, that the staves had been manufactured in accordance with the specifications and that appellant consequently should have paid a larger sum than it did pay in the check accompanying the letter advising that the check was tendered in full satisfaction of appellees' demand. A sharp conflict had arisen between the parties concerning the rejointing of these staves and in a letter dated March 17, written to the milling company by the appellant cooperage company, that company sharply defined its position and later, on the 24th of the same month, wrote the letter above mentioned in which the check was enclosed. The milling company promptly acknowledged the receipt of the check and advised the cooperage company that it had been received and credited on the account, and the milling company also immediately advised appellee, Gibbs, who had manufactured the staves, of what had been done, this information being communicated by the enclosure of the cooperage company's letter, in which the account was stated as it understood it to be and the statement made that the check was enclosed in full satisfaction of all demands growing out of it. Gibbs promptly advised the milling company that he would not accept this settlement, and insisted that the rejointing charges were not correct, but he did not direct the milling company to return this check, nor was any tender of that money ever made. The milling company cashed the check and credited the proceeds thereof on their books to the account of Gibbs, about which action no complaint was made except that the check should not have been received in full satisfaction of the claim.

Appellees insist that there was no accord and satisfaction in this case for the reason that Gibbs promptly declined to accept the check in satisfaction of his demand, and for the further reason that a misrepresentation was made to the milling company by the cooperage company, which induced the first named company to accept the check. In the letter above referred to, of date March 17, the manager of the cooperage company wrote to the milling company that one Bishop, acting for Gibbs, had examined the staves and expressed himself as entirely satisfied with the loss occasioned by the rejointing, and had explained why this service was necessary by saying that, instead of jointing the staves according to the specifications, the car had been loaded and shipped without regard to the specifications, and that Bishop had been furnished a full report as to the actual outturn of the car, and they understood this report was satisfactory, whereas appellees say the facts were that the jointing had been done in accordance with specifications and Bishop had not assented to the contrary statement.

Numerous instructions were requested, of which a number were given, but we do not set them out as our views of the law of this case are expressed in the opinion.

There was a verdict and judgment for appellees for the full amount sued for, and this appeal has been duly prosecuted.

*John H. Crawford,* for appellant.

1. If Gibbs was the owner of the staves, the milling company was acting as the agent for an undisclosed principal who will be bound by its acts. 87 Ark. 438; 42 Ark. 97.

2. When appellees accepted the statement and check from appellant, showing payment in full, it amounted to an accord and satisfaction of the demand sued on. 94 Ark. 158; 100 Ark. 251; 27 L. R. A. (N. S.) 439, note; 98 Ark. 269; 122 S. W. 771; 137 Mo. App. 472;

129 S. W. 138; 113 Mo. App. 612, 88 S. W. 128; 138 N. Y. 231, 20 L. R. A. 785; 31 L. R. A. 771; 161 Ill. 339, 43 N. E. 1089; 115 N. C. 120, 20 S. E. 208; 100 Mo. App. 599, 75 S. W. 178; 188 Mo. 611, 87 S. W. 981; 75 Ark. 354. See also 148 N. Y. 332; 145 Mo. 659; 66 N. W. 834; 166 Mo. 335; 83 O. St. 169, 32 L. R. A. (N. S.) 380.

3. If the staves belonged to Gibbs, and the milling company was acting as his agent, being in possession of the staves with authority to sell, it acted as a factor and not a broker, and when it effected a sale, it had the right to collect the purchase money. Black's Law Dict. 470; *Id.* 155; 19 Cyc. 116; *Id.* 136; Story on Agency, (5 ed), § 112; 46 Ark. 210, 214; 134 Ill. 188; 27 N. E. 89; 124 Ky. 435, 8 L. R. A. (N. S.) 474; 7 Mass. 319; 5 Am. Dec. 47, 49; 56 Mo. 434; 1 Car. Law Rep. 527, 6 Am. Dec. 555; 101 U. S. 181, 183; 10 Wall. 141.

4. Gibbs could not accept from the milling company the money covered in the check for $72.56, and afterward repudiate his factor's authority to accord and satisfy the disputed claim between himself and the cooperage company. 9 Wall. 76, 82; 96 U. S. 640; 1 Ruling Case Law, 181, § 9; 146 N. C. 191; 14 Ann. Cas. 211; 53 S. W. 512; 28 Ark. 59; 29 Ark. 99; *Id.* 131; 54 Ark. 216; 55 Ark. 112; 80 Ark. 65; 97 Ark. 589; 121 Ill. 25.

*McMillan & McMillan,* for appellees.

1. The evidence shows that the staves were in accord with the specifications of the contract. From the evidence the jury might have concluded that the alleged accord and satisfaction between the appellee, the milling company, and the cooperage company, was not binding on Gibbs because (1) Gibbs did not authorize it and did not ratify it, and (2) the alleged accord and satisfaction was obtained by fraud.

Under the circumstances of this case it was a question of fact for the jury as to whether there was an accord and satisfaction. It can not be said that the conditional nature of the tender appeared so clearly that a court could say that the acceptance of the check was an

accord and satisfaction. Appellant selected the language and can not complain if it was not so clear that the milling company could not misunderstand that the check was tendered on condition that its acceptance was an accord and satisfaction. 84 Ark. 431; 90 Ark. 256; 107 S. W. 440.

An accord and satisfaction obtained by fraud is void. 83 Ark. 575; 87 Ark. 614; 1 Cyc. 340, note 15.

2. Gibbs did not ratify the settlement. The evidence shows that Gibbs refused to accept the credit and told Nowlin he would not accept it. His acts were not inconsistent with any other hypothesis than that of approval of the milling company's acts.

Ratification is a question of fact for the jury, under the circumstances. 99 Ark. 358; 90 Ark. 104-7.

SMITH, J., (after stating the facts). As has been stated, the proof was sufficient to support the jury's finding that the staves had not been manufactured in accordance with the specifications; and we also think the proof was sufficient to support a finding upon the part of the jury that the appellant company was advised, before mailing the check to the appellee milling company, that the company was not the owner of the staves, but had shipped them for the owner; but it is not insisted that the milling company had no authority to assent to the appellant's proposition about rejointing the staves; and, in fact, we think the proof abundantly sufficient to show that such authority existed had that question been raised. But appellees say this service was not performed as charged for and that in this rejointing a great many good staves were thrown aside as culls, and the verdict of the jury sustains them in this contention and their recovery would be sustained but for the evidence in regard to the accord and satisfaction.

(1) There is no question but that the check, payable to the order of the milling company, was tendered in full satisfaction of this demand, as the letter accompanying it unequivocally states the fact so to be and the correspondence between the parties shows that it was so

intended. The law in such cases was announced in the case of *Barham* v. *Bank of Delight,* 94 Ark. 158, where the court said:

"It is true that, in order to constitute an accord and satisfaction, it is necessary that the offer of the payment should be made by one party in full satisfaction of the demand, and should be accepted as such by the other. But when the claim is disputed and unliquidated, and a less amount than is demanded is offered in full payment, the question as to whether the creditor in such case does so agree to accept the amount offered in full satisfaction of his demand is a mixed question of law and fact. If the offer or tender is accompanied by declarations and acts so as to amount to a condition that if the creditor accepts the amount offered it must be in satisfaction of his demand, and the creditor understands therefrom that if he takes it subject to that condition, then an acceptance by the creditor will estop him from denying that he has agreed to accept the amount in full payment of his demand. His action in accepting the tender under such conditions will speak, and his words of protest only will not avail him."

To the same effect see *Cunningham* v. *Rauch-Darragh Grain Co.,* 98 Ark. 273, and *Barham* v. *Kizzia,* 100 Ark. 252.

(2) It is insisted, however, that there is no accord and satisfaction here for the reason that the appellee milling company was induced to accept the check by the statement contained in the letter before referred to that Gibbs' representative was satisfied with the action appellant had taken in regard to rejointing the staves, and notwithstanding appellant's contention that such was the fact the verdict of the jury is conclusive that such action was not, in fact, satisfactory. However, it is undisputed that Gibbs did not direct the milling company to return this check, or its proceeds, and no such tender has ever been made. Upon the contrary, the appellees contend that a false statement having been made which induced the milling company to accept it, they are re-

quired only to credit it on the account. We think it can make no difference in this case that the check was sent to the milling company rather than to Gibbs himself, as he knew the condition upon which it had been mailed. In Volume 1, Ruling Case Law, p. 181, in discussing the authority of an agent to bind his principal to a contract of accord and settlement, it was said:

"If, however, an agent without authority receives a payment in accord and satisfaction of a demand owing his principal, and the principal receives from the agent and appropriates the money so paid, with knowledge of the transaction, he, of course, ratifies the act of the agent."

To the same effect is the case of *Cashmar-King Supply Co.* v. *Dowd,* 146 N. C. 191, where it is said:

"It is not within the power of the plaintiff to repudiate his (the agent's) act as being one not authorized, and apply the money as a payment on the debt. The money must be accepted according to the intention of the parties to the transaction and applied accordingly; that is, to the full discharge of Dowd's liability, or rejected for the want of authority, in which case the parties would be restored to their original rights. Sound morality and fair dealing imperatively require the law to apply this rule to our business affairs. The plaintiff is not permitted to 'blow hot and cold,' or to accept and reject at the same time."

In support of the position that the consideration does not have to be returned where an accord and satisfaction is had or a release of a demand given which was induced by fraud, appellees cite the case of *Industrial Mutual Indemnity Co.* v. *Thompson,* 83 Ark. 575. In that case it was said:

"The jury having determined, upon evidence sufficient here, that the receipt was fraudulently obtained and therefore void, it was not a prerequisite to the maintenance of appellee's suit that she should have tendered to appellant the amount she had been paid. *St. Louis, I. M. & S. Ry. Co.* v. *Smith,* 82 Ark. 105, and authorities

cited. The jury made a deduction in their verdict of the amount that had been paid. Moreover, the question is raised here for the first time. It could not avail also for that reason.''

It will be observed that the court there cited the case of *St. Louis, I. M. & S. Ry. Co.* v. *Smith,* 82 Ark. 105, in which the facts were that the purported release relied upon in that case was signed under a misapprehension of the recitals of that instrument induced by a false statement of the claim agent for the company who made the settlement as to the purport of the writing. Moreover, it was said in the case quoted from that the question of fraud was raised for the first time on appeal, and there was no necessity to review the authorities in that case and there was no intention to announce a rule in conflict with the case cited nor the older cases of *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 73 Ark. 42, and *Harkey* v. *Mechanics & Traders Ins. Co.,* 62 Ark. 274. There was no necessity in this *Industrial Mutual Indemnity Co.* v. *Thompson* case to discuss under what circumstances the consideration must be returned where it was shown the settlement had been procured by fraud.

The case of *St. Louis, I. M. & S. Ry. Co.* v. *Brown, supra,* distinguishes those cases where the consideration must be returned as a condition precedent to the maintenance of a suit from the cases where this requirement is not imposed, and in that case it was there said:

''Money paid to a party as a consideration for a release does not have to be tendered or refunded, to enable such a party to bring and maintain his suit, where it is shown that at the time the money was paid him and the release was executed he was incapable of making a contract, and that by fraud and circumvention or imposition he was induced to sign a paper of whose contents and character he was ignorant. *Chicago, R. I. & P. Ry. Co.* v. *Lewis,* 109 Ill. 120.''

The facts in this Brown case were that a release of personal damages had been signed by a person at a time

when, by reason of physical injuries and of narcotics which had been administered to him, he was incapacitated to contract, and it was held that that contract was not binding upon him, and it was there expressly said that the case was distinguished from cases like *Harkey* v. *Mechanics & Traders Ins. Co.,* 62 Ark. 274, and *St. Louis & C. R. Co.* v. *Selman,* 62 Ark. 347.

In the case of *Harkey* v. *Ins. Co., supra,* a receipt had been signed in full settlement of a loss sustained by the insured from a fire, and it was shown that this settlement had been procured by fraud practiced upon him through the representations of the adjuster of the insurance company. Without returning or tendering the sum paid in satisfaction of this loss, the insured sued to recover upon the policy, and a demurrer to the complaint having been sustained by the trial court on the ground that it did not show that plaintiff had returned or offered to return to the defendant the money received on the compromise before the commencement of the suit, the cause was dismissed and, in affirming that action of the trial court, Mr. Justice RIDDICK, speaking for this court, said:

"This is not a case where a debtor compromises with his creditor by the payment of a part of an undisputed debt in satisfaction of the whole, nor is it a case where a party has been induced by fraud to sign a release of his claim through ignorance of the character and contents of the instrument signed. In each of these cases a different rule would apply. *Reynolds* v. *Reynolds,* 55 Ark. 373; *Mullen* v. *Old Colony Railroad,* 127 Mass. 89. This case rests on the rule that one who receives money or property in consideration of making an agreement, and afterward seeks to avoid and hold for naught such agreement, must first give back to the other party the consideration received. The plaintiff had no right of action at law upon his policy until he had rescinded the agreement annulling such policy by offering to return the money received from defendant upon such agreement." A number of cases are cited in

the opinion in support of the proposition there announced.

In the late case of *Bearden* v. *St. Louis, 1. M. & S. Ry. Co.,* 103 Ark. 341, there was a release which was held to be void because the court said the evidence was sufficient to warrant a finding that the plaintiff in the suit, at the time she signed the release, under the evidence, was not aware of the contents of the paper, and her signature had been induced by reason of her ignorance and illiteracy, and suffering at the time, and it was there said: "There was evidence to warrant the finding that the settlement and release were fraudulent and void. This case is ruled on this question by the case of *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 73 Ark. 42. According to the doctrine of that case, "money paid a party as a consideration for a release does not have to be tendered or refunded to enable such party to bring and maintain his suit where it is shown that, at the time the money was paid him and the release was executed, he was incapable of making a contract, and that, by fraud and circumvention or imposition, he was induced to sign a paper of whose contents and character he was ignorant."

Whatever reason originally may have prompted the distinction which the courts have made between the cases where the consideration must be returned and those cases where that requirement is not exacted, the rule appears to be that, as a condition precedent to the rescission of an accord and satisfaction, or a release where the accord was made or the release given as the result of fraud practiced in their procurement, the consideration must be returned or tendered before the suit can be maintained; but that rule is subject to certain exceptions which are stated in 1 Cyc. p. 339, as follows:

"As a general rule, one who seeks to avoid the effect of an accord and satisfaction on the ground of fraud, mistake or for any other reason (it is apprehended) must restore or offer to restore to the other

party whatever he has received by virtue of the transaction.

"The rule, however, is subject to some limitations and exceptions. It does not apply where the agreement is absolutely void, or where the other party has failed to comply with other material obligations which were of the essence of the agreement, or where defendant admits that what was paid was justly due under the contract sued on. So, where the claimant executes a release for two distinct claims, on the understanding (superinduced by the other party's fraud) that it applies only to one of them, he need not tender back the consideration received before suing on the other. It has also been urged that another exception should be made in case of the party's mental incapacity or financial inability to meet this requirement; but it was held that, even if the rule admitted of any such exception, the exception can not obtain unless the fraud remained undiscovered or the mental incapacity continued until after the consideration for the agreement had been expended or otherwise put beyond plaintiff's control."

A discussion of the same principle is found in 34 Cyc., p. 1071, in the article on the subject of Releases, and in the discussion of the necessity for the restoration of the consideration as a condition precedent to attacking a release, it was there said:

"It is generally held that if a person enters into a release and afterward seeks to avoid the effect of it on any ground that will entitle him to rescind it, he must first restore what he has received, although there is some authority to the effect that such restoration or tender need not be made, and that it is sufficient to credit the amount paid with interest on the judgment recovered."

After this statement of the rule there follows, on page 1073, a statement of the exceptions to it, and where it was said:

"When a releasor who is himself free from negligence, is deceived as to the nature of the instrument executed by him, as for instance, where the release is repre-

sented to be a receipt for a gratuity, or for expenses, for loss of time, for wages, to indicate absence of any ill-will, or that it was a partial release, as that it was a release for damages to clothing or property and in fact included personal injuries, the consideration received need not be restored or tendered. Likewise, according to some cases, where the releasor was mentally incapable of executing the release. Nor is a releasor required to return that which in any event he would be entitled to retain, either by virtue of the release itself or of the original liability, but credit must be given on the judgment. Furthermore, the releasor is entitled to retain the consideration received by him from the releasee by virtue of a transaction independent of the release. It has been held that if the releasor be an infant, he may repudiate his release without restoring or tendering the consideration. * * *''

A number of cases in our own reports illustrate these exceptions, and several of them are cited in the notes to the text which we have just quoted. Among such cases are the following. *St. Louis, I. M. & S. Ry. Co.* v. *Reilly*, 110 Ark. 182; *St. Louis, I. M. & S. Ry. Co.* v. *Bearden*, 107 Ark. 363; *St. Louis, I. M. & S. Ry. Co.* v. *Hambright*, 87 Ark. 614; *Bearden* v. *St. Louis, I. M. & S. Ry. Co.*, 103 Ark. 341; *St. Louis, I. M. & S. Ry. Co.* v. *Sandidge*, 81 Ark. 264; *Hot Springs Rd.* v. *McMillan*, 76 Ark. 88; *St. Louis, I. M. & S. Ry. Co.* v. *Higgins*, 44 Ark. 293; *George* v. *St. Louis, I. M. & S. Ry. Co.*, 34 Ark. 613, also the cases which have been quoted from.

It follows, from what we have said, that there was a valid accord and satisfaction in this case and that appellees, not having returned or tendered the amount of the check, will be held to have accepted it in full satisfaction of this demand, and the judgment of the court below will, therefore, be reversed and the cause of action dismissed.