St. Louis, Iron Mountain & Southern Railway Company *v.*

Sandidge.

Opinion delivered January 7, 1907.

Release—repudiation—refunding money.—A release of damages obtained by fraud from a person incapable of contracting may be repudiated by him without refunding the consideration received for such release.

Appeal from Saline Circuit Court; *Alexander M. Duffie,* Judge; affirmed.

*B. S. Johnson,* for appellant.

1. The verdict ignores the complete accord and satisfaction of all claims made by the plaintiff before suit was brought.

2. The court erred in refusing the fourth instruction asked for by the appellant. 86 N. Y. 79; 61 Fed. Rep. 54; 65 Fed. 460; 113 Fed. 915; 62 Ark. 278. And also in refusing the 5th and 10th instructions on the same point.

3. There can be no recovery for fright, hence the 3d instruction given was erroneous. 69 Ark. 405. In the absence of physical injury, and upon a mere showing of fright and nervous shock, as appears from this record, appellee is not entitled to recover. 64 Ark. 544; 65 Ark. 180; 67 Ark. 123; 25 Iowa, 268.

*C. V. Teague,* for appellee.

The proof is clear that the claim agent took advantage of her condition—that she signed the release at a time when she was not in a mental condition to realize what she was doing. Obtaining the release under such circumstances was such a fraud as to vitiate the contract. 73 Ark. 43. And it was not necessary to tender back the consideration received before suing. *Id.;* 6 Wash. 202; 109 Ill. 120; 18 Kan. 58. See also 75 Ark. 88; 6 Gray (Mass.) 279; 201 Ill. 152; 67 N. C. 122.

Battle, J. On November 22, 1904, Carrie Sandidge was a passenger on a train of the St. Louis, Iron Mountain and Southern Railway Company. On that day, near Swifton, Arkansas, the train was wrecked by a collision with a freight train of the company, and the car in which Mrs. Sandidge was seated was derailed, and she was seriously injured. On the same day she

received a check of the company for one hundred dollars to compensate her for her damages, and she executed to it an instrument of writing in which she released and discharged it from all claims or liability growing out of the accident. On the 25th day of March, 1905, she brought this action against the railroad company to recover damages suffered from the injuries received in the wreck, and the defendant pleaded the release in bar of the same.

In a trial before a jury evidence was adduced tending to prove the following facts:

Prior to the 22d of November, 1904, Mrs. Sandidge was in good health and earned her living. On the day named she was a passenger on a train of the defendant. On that day the train was wrecked, and she was knocked senseless, and during the day was hardly conscious; suffered great pains in her head and spine, and was compelled to take morphine for relief; took two or three doses. The morphine made her dull; she could not control her thoughts, and talked at random. She was extremely weak, nervous and hysterical, and seemed to be bewildered. While in this condition she signed an instrument of writing in which, for the consideration of a check for one hundred dollars, she released the railroad company from all liability for the injuries she received. She did not know what she was doing when she signed it. On the night of the 22d of November, 1904, she arrived at Hot Springs, Arkansas, her former home, and was nearly crazy; did not know her own son; did not know where her grip was, or where she was; grew worse for several days after the wreck; was nervous and dazed. On the 21st day of December, 1904, she consulted a physician. He found her in a very nervous condition, trembling, cold hands, complaining of pains in the head and neck, noises in the ears, fainting spells, and had dilations of the pupils, and suffering from traumatic neurosis of the spine. Every ten days she has severe spells of pain in her head and spine; has to take medicine most all the time; does not sleep well. When frightened or excited, has spasms and fainting spells and falls down. When she has the fainting spells, she is sick in bed for two or three days. She has to have an attendant when she goes out in town, she being afraid that she might have spasms, faint and fall in the street. She collected the check for the one hun-

dred dollars, but did not know, at the time, the contents of the release, and was not resposible for what she was doing. Soon after the accident she was forgetful and could not remember as she did before. She has been unable to work since the accident; before, she earned from forty to fifty dollars a month. Evidence was also adduced tending to prove facts in conflict with the foregoing, which it is not necessary to state, as the question for us to decide is, was there evidence, if true, sufficient to sustain the verdict?

Among other instructions the court gave to the jury the following:

"If the plaintiff, while under the influence of opiates to such an extent as to be incapacitated to contract, executed a release of damages for personal injuries, it is not obligatory on her, and is no defense to this action.

"3. If you find from the evidence in this case that plaintiff, while a passenger on one of defendant's trains, was injured in a wreck of the train on which she was a passenger, and that the wreck was caused by the negligence of defendant, as explained in other instructions, that she was frightened, injured and shocked to such an extent that opiates were administered to her, and by reason thereof her mental faculties were impaired to the extent of rendering her incapable of entering into a contract, as explained in other instructions, and while in that condition defendant's agents procured her signature to the release introduced in evidence, it is no defense in this action.

"2. You are instructed that a settlement and receipt in full of an unliquidated demand, when made with a complete knowledge of all circumstances and the mental capacity to contract, is a bar to a subsequent action upon the demand; therefore, if you believe from the evidence in this case that the plaintiff accepted $100 in satisfaction of all demands against the defendant growing out of the wreck, and that she at the time knew all the circumstances, your verdict must be for the defendant.

"13. Even if you should find from the evidence that plaintiff signed the release at a time when her faculties were so impaired that it would not be binding on her, still if you find from the evidence that, after she got to Hot Springs, and two or three days after she had taken any opiates, and while she was in pos-

session of her faculties and capable of understanding what she was doing, she collected the money, and she knew at the time that said amount was in full satisfaction of all claims against the defendant, this is a ratification of the contract, and your verdict must be for the defendant."

And the court refused to give the following at the request of the defendant:

"4. When a person receives money in consideration of making an agreement, and where the agreement is not obtained by fraud, and afterwards seeks to avoid the agreement and to have it set aside, he must first give back the money received; and if plaintiff has not done this, your verdict must be for the defendant.

"5. You are instructed that the plaintiff in this case had no right of action at law, until she had rescinded the agreement and returned or offered to return the money received from defendant upon such agreement; and if you find from the evidence that the plaintiff has not done this, you must find for the defendant."

The jury returned a verdict in favor of the plaintiff for $3,000, less $100 which had been paid; and the defendant appealed.

There was evidence adduced at the trial which was sufficient to sustain the verdict of the jury. The remaining question is, did the court err in refusing to give instructions numbered 4 and 5, asked for by the appellant? In other words, was it the duty of appellee to refund the one hundred dollars received by her from appellant as compensation for injuries, before bringing this action? According to the ruling of this court in *St. Louis, Iron Mountain & Southern Railway Company* v. *Brown,* 73 Ark. 42, it was not. See 24 American & English Encyclopedia of Law, 320, and cases cited.

Judgment affirmed.