TRUMANN COOPERAGE COMPANY v. CRYE.

Opinion delivered February 17, 1919.

1. TRIAL — DIRECTED VERDICT — SUFFICIENCY OF EVIDENCE.—Where there was evidence to sustain a verdict for plaintiff, the court did not err in refusing to direct a verdict for defendant.

2. MASTER AND SERVANT—INJURY TO EMPLOYEE—INSTRUCTION.—In an action by an employee for injuries from a fall of a stave-steaming tunnel wall which the employee had helped to construct, an instruction that the employee assumed the risk if he helped to build the wall or knew or could have known the manner in which it was constructed, was properly refused.

3. MASTER AND SERVANT—DUTY OF EMPLOYEE.—A carpenter engaged in constructing tunnels for steaming of staves under personal direction and supervision of a foreman and pursuant to the latter's plans, has not, as matter of law, the duty of making such tunnels safe to work in.

4. MASTER AND SERVANT—ASSUMPTION OF RISK.—Where a carpenter was engaged as member of a crew in constructing a stave-steaming tunnel under the personal supervision and direction of a foreman, the dangers incident to such work were not so open and obvious that, in the exercise of ordinary care, he was as matter of law bound to know and appreciate them.

5. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—Whether the danger of a falling wall was one of the ordinary hazards incident to the service of a carpenter engaged in constructing a tunnel for steaming staves *held* a question for the jury.

6. MASTER AND SERVANT — MASTER'S NEGLIGENCE — SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain finding of master's negligence in having walls of a tunnel constructed without sufficient braces and without providing a foundation of wood or other substance instead of concrete, in which the bottom planks could have been fastened.

7. MASTER AND SERVANT—DUTY OF MASTER—SAFE PLACE.—A master employing men to construct, under personal direction of a foreman, stave-steaming tunnels, is required to construct the tunnel walls in such a manner as to be a safe place to work in.

8. MASTER AND SERVANT—ASSUMED RISK.—The risk incident to the master's negligence in improperly constructing a tunnel was not as matter of law assumed by a carpenter in carrying rubbish out of the tunnel after having aided in its construction where he was not aware of such negligence or of the dangers arising therefrom.

9. RELEASE—VALIDITY.—A release procured by a master from a servant when the latter was not mentally competent to make it is not binding.

Appeal from Poinsett Circuit Court; *R. H. Dudley,* Judge; affirmed.

*Lamb & Frierson,* for appellant.

1. The conduct of plaintiff subsequent to the settlement estopped him from pleading its invalidity. If he was not in mental condition to make a settlement then he had a right to ignore it and sue for damages, but after becoming fully aware of everything done he cannot continue to approve the settlement, receive continued benefits under the contract and when it had been fully performed by appellant repudiate it and sue for damages. 115 Ark. 238 (248); 12 C. J., p. 355, § 55; 101 Minn. 439; 112 N. W. 1501; 2 So. 302; 56 Ala. 375; 48 Pac. 54; 61 N. W. 867-9; 55 *Id.* 377 (380); 44 Pa. 9; 20 Cyc. 92.

2. The settlement was valid when made. Crye was mentally competent to make it as the testimony shows. There were no misrepresentations nor fraud. 102 Ark. 616; 85 *Id.* 592 (595); 119 *Id.* 95 (100-1). Settlements fairly and honestly made are favored by the law. *Supra.*

3. Instruction No. 3 asked by defendant should have been given as plaintiff assumed the risk. 88 Ark. 548. Even the negligence of the master may be assumed. *Ib.* Assumed risk and contributory negligence were a complete defense. 104 Ark. 489 (498); 56 *Id.* 216-221; 97 *Id.* 486; 101 *Id.* 197 (202). Crye was experienced and had notice of the danger. He was the victim of his own carelessness, and the court erred in refusing to give instruction No. 3. The verdict is contrary to the law and the evidence. *Supra.*

*C. T. Carpenter,* for appellee.

1. The settlement was not valid when made. Crye was mentally incapable by reason of his condition and the jury by their verdict so found. It was a question for the jury. 81 Ark. 264; 103 *Id.* 343.

2. There is no error in the instruction given or refused. Negligence was proven and Crye did not assume the risk. 97 Ark. 364; 77 *Id.* 458; 95 *Id.* 294; 103 *Id.* 99; 89 *Id.* 424. Crye had no knowledge of the risk or danger and had the right to rely upon the assumption that the master has performed his duties so as not to expose him

to extraordinary hazards. 67 Ark. 209; 90 *Id.* 556; 92 *Id.* 102; 77 *Id.* 367; Labatt on M. & S., § 279. He did not as-sume the risk. *Supra.* Labatt on M. & S., § 279, and cases *supra.*

WOOD, J. The appellee instituted this action against the appellant. Appellee alleged that he was in the employ of the company helping to construct tunnels for steaming staves; that he was under the direction of his foreman; that while engaged in the work one of the walls fell on him and injured him severely; that his injury was caused by the negligence of the company in failing to brace the walls, and in failing to secure them to the foundation, and to have them level on the foundation. That the appellee was ignorant of these conditions; that after the injury the appellant company sent the appellee to the hospital at Jonesboro, Arkansas, and placed him under the care of its physicians, where the appellee suffered great pain and anguish for six weeks when his left leg was amputated. That while he was in the hospital the claim agents, attorney, and physician of appellant company came to the hospital and represented to the appellee that appellant was not liable for the accident and that there could be no recovery for same. The physician stated to appellee that he would be well and all right in a short time. Appellee under these representations and relying upon the truth of same signed a release to appellant for all damages he had sustained. He further alleged that prior to, at the time of, and long after the signing of the release he had suffered greatly and was irrational from the strong medicine he had taken and the great pain he had endured. That the representations made to the appellee by the appellant's agents were false and that they knew the same to be false and that the representations were made for the purpose of inducing the appellee to sign the release.

The appellant in its answer admitted the injury but denied specifically the allegations of negligence and of misrepresentation and fraud. It set up that appellant had settled with the appellee for the damages that he

had sustained, and pleaded such settlement in bar of his right to recover. It also pleaded in defense assumed risk and contributory negligence.

In November, 1914, the appellee was in the employ of appellant. He was a carpenter and was working with the crew, from eight to fifteen men, under the supervision of a foreman in constructing tunnels for the purpose of steaming staves. The tunnels were all constructed on a concrete floor. Each tunnel was 5¼ feet wide, 6½ feet high. The entire breadth of the concrete floor was 26 feet and the length was 40 feet. The door was level except at distances of a little over five feet there were elevations 6 inches wide and 4 or 5 inches high made of concrete. On top of these elevations the partition walls of the tunnels were built of two-by-six pine planks laid flat one upon the other with broken joints. The first two planks were laid on the concrete elevations and thirty-penny nails were driven through them. If these nails had penetrated the concrete they would have extended into same from one-half to one inch. The spikes were driven at intervals of six or eight inches lengthwise and alternately on opposite edges. The walls were not braced but there were pieces, one-by-fours, used as a straight-edge to build the wall by and these were connected by one-by-fours nailed on at the top. The crew who built the walls worked in pairs. Wall number one was nailed to a mud sill. Wall number two was laid on the concrete as above indicated. The purpose in laying the planks flat one on the other with broken joints was to make the walls so close that the tunnels would be steam tight.

Crye with a fellow servant had worked on walls two and three, and after these were completed he was directed by his foreman to go between walls one and two to clean out the rubbish and while so engaged wall number two fell upon him, crushing him and inflicting the injuries of which he complains. Workmen thought that the walls while being constructed were safe. Some of the workmen went over them when they were about waist high and some climbed upon them after they were built full height.

One of the workmen observed that wall number two before it fell on the appellee, was shaky. It was discovered after the wall fell that the nails which had been driven through the first two boards had drawn the planks up to the head of the nails and had not entered the concrete but raised the boards off the concrete so that wall number two would rock.

Appellee had been working around the factories at Trumann about nine years as a common laborer. He was not a skilled workman.

The above are substantially the facts on the issues of negligence, contributory negligence, and assumption of risks, when stated from the viewpoint of the appellee, and giving the evidence the strongest probative force in his favor.

These issues were submitted to the jury upon correct declarations of law, and there was evidence to sustain the verdict. The court, therefore, did not err in refusing appellant's prayer for instruction directing the jury to render a verdict in its favor.

Appellant contends that the court erred in refusing its prayer for instruction number 3, which in effect calls the jury that "if Crye helped build wall number two, or was present, saw, or knew how it was built, or if he by the exercise of ordinary care could or should have known the manner in which it was constructed, and all the facts and conditions in connection with it, then he assumed the risk and cannot recover."

The court instructed the jury on the issues of assumed risk as follows: "You are instructed that the plaintiff assumed all the risks ordinarily incident to the work he undertook to do for the defendant company, and also all those risks where plaintiff was aware of the condition of the tunnels on which he worked and the perils and dangers incident thereto."

The court also gave the following at the request of the appellant: "If you find from a preponderance of the evidence that the conditions existing which caused or permitted the wall to fall were open, visible and apparent

to plaintiff, or in the exercise of ordinary care and observation for his own safety would have been so open and visible, then he can not recover in this suit.''

The court did not err in refusing to give appellant's prayer for instruction number three. This prayer if granted would have imposed upon the appellee the duty to exercise ordinary care not only to discover the manner of the construction but also the facts and conditions in connection therewith. The instruction was calculated to mislead the jury and cause them to conclude that the appellee had some affirmative duty of inspection to determine whether there were facts and conditions existing that would endanger his safety other than those incident to the ordinary performance of his duty in the manner directed by his foreman. This is not a case where it can be said as a matter of law that the servant was charged with the duty of making his own place safe as he performed his work. The appellant, the master, had planned the work and through its foreman was present directing and supervising its construction. It is not a case where it can be said as a matter of law that the dangers connected with the work were so open and obvious that the servant in the exercise of ordinary care for his own protection would be bound to know and appreciate them.

The evidence tends to show that the plan for the construction of these tunnels and the manner in which they were constructed was not such a simple piece of work that it could be said as a matter of law that the unskilled laborer would be expected to know as much about it as the foreman who was directing the operations.

Under the facts of the record it was peculiarly a question for the jury to determine whether the danger of a falling wall was one of the ordinary hazards incident to the service which appellee was performing at the time of the accident, namely, the clearing of the rubbish from the completed tunnels, which work he was performing under the immediate direction of his foreman.

The jury were warranted in finding from the evidence that the injury was caused from the negligence of

appellant in having these walls constructed without suf-
ficient braces on the sides to sustain the same, and with-
out providing a foundation of wood or other substance,
instead of concrete, in which the bottom planks could
have been nailed, or some other device that would have
made the walls stable. The duty of providing such means
and such method of construction and of inspection to see
that same were safe, was that of the master. The failure
to exercise ordinary care in the performance of such
duty was negligence of the master. The risks and dan-
gers incident to such negligence could not be said as a
matter of law to be one of the ordinary risks incident to
the employment. The servant under such circumstances,
in the absence of evidence tending to show that he was
aware of the master's negligence and appreciated the
dangers arising therefrom, could not be said to have as-
sumed the risk.

The instructions given by the court on the issue of
assumed risk were really more favorable to the appellant
than the evidence warranted. See *Southern Cotton Oil
Co.* v. *Spotts*, 77 Ark. 458; *A. L. Clarke Lumber Co.* v.
*Northcutt*, 95 Ark. 291, and cases there cited; *A. L. Clarke
Lumber Co.* v. *St. Coner*, 97 Ark. 364; *Asher* v. *Byrnes*,
101 Ark. 197-201.

Appellant contends that it made a valid settlement
with the appellee for all the damages he sustained by rea-
son of his injury as evidenced by a written contract of
release duly executed by the appellee and introduced in
evidence by the appellant.

The appellee admitted the execution of the written
contract for release but set up that it was not binding
upon him for the reason that he was not at the time of
its execution mentally capable of making such a con-
tract.

The court submitted this issue to the jury under
instructions on its own motion and also under prayers
granted at the instance of the appellant, which cor-
rectly declared the law in conformity with previous
decisions of this court. *St. L., I. M. & S. R. Co.* v. *Brown,*

73 Ark. 43; *St. L., I. M. & S. R. Co.* v. *Sandidge,* 81 Ark. 264. See also *Bearden* v. *St. L., I. M. & S. R. Co.,* 103 Ark. 343.

The appellant also requested the court to submit to the jury the following interrogatory:

"No. 1. Do you find from the evidence, under the instructions given you by the court, that on December 19, 1914, the plaintiff was mentally competent to make the settlement which was made?"

This interrogatory the jury answered, "No."

The appellant now contends that the evidence was insufficient to sustain the verdict. It could serve no useful purpose to set out and discuss the evidence in detail. The issue was one for the jury under the evidence and their verdict is conclusive here.

The appellant also contends that even if the settlement was invalid when made that the appellee by his subsequent conduct was estopped from setting up its invalidity. The appellant by prayers for instructions, which the court granted, and also by interrogatory which at its request was propounded to the jury likewise, caused this issue to be submitted to the jury.

The appellant contends here that there was no evidence to sustain the verdict on this issue. It suffices to say that we have carefully examined the testimony bearing on this issue and find that the evidence was sufficient to sustain the verdict. There was testimony from which the jury might have found that at the time the settlement was made and at the time the release was executed and continuously thereafter, covering the period in which appellant claimed that appellee by his conduct ratified the release, he was not competent to transact business and did not have sufficient intelligence to enable him to understand and appreciate his rights and to enter upon any contract that could be considered the ratification of his previous invalid acts. There was no error at the trial and the judgment is, therefore, affirmed.