## MISSOURI PACIFIC RAILROAD COMPANY *v.* BERRY.

### Opinion delivered June 12, 1922.

1. APPEAL AND ERROR—WEIGHT OF EVIDENCE.—It is not within the province of the Supreme Court to pass upon the weight of evidence.

2. CARRIER'S NEGLIGENCE—QUESTION FOR JURY.—In an action by a passenger for injuries received on defendant's local freight train caused by a violent jerk of the train while moving on after it had stopped near plaintiff's destination, and while she was preparing to alight, the question whether the train stopped with an unusual jerk *held* under the evidence for the jury.

3. TRIAL—INSTRUCTIONS ALREADY GIVEN.—It was not error to refuse an instruction covered by one already given.

4. RELEASE—VALIDITY.—In an action for personal injuries, evidence *held* sufficient to sustain a finding that plaintiff did not know what she was doing when she signed a release.

5. CONTINUANCE—SURPRISE.—The complaint alleged that plaintiff was injured while in the act of alighting from defendant's train by the sudden starting and stopping of the train. Eye witnesses testified in accordance with this allegation, but plaintiff testified that she was struck in the back by another train which going out of the coach door. *Held* that refusal to grant a continuance because of surprise at plaintiff's testimony was not error, in view of the fact that the testimony was practically undisputed that plaintiff was injured by falling on her back while alighting and that the case was submitted on that theory alone.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran,* Judge; affirmed.

*Thos. B. Pryor* and *Vincent M. Miles,* for appellant.

The court erred in overruling defendant's motion for continuance on the ground of surprise and variance. 71 Ark. 197.

The court should have instructed the jury that the release executed by the plaintiff was binding. 107 Ark.

202. By cashing the check and accepting the money she ratified the transaction. 115 Ark. 238.

*Geo. W. Johnson, David Partain* and *G. L. Grant,* for appellee.

There was no settlement or release. It was proper to submit to the jury the qestion of whether or not the plaintiff was capable of transacting business, and whether or not an unfair advantage had been taken of her. 137 Ark. 293.

HART, J. Martha Berry sued the Missouri Pacific Railroad Company to recover damages for injuries received while alighting from one of the defendant's local freight and passenger trains at Greenwood, Ark. She recovered judgment, and from the judgment rendered, the railroad company has duly prosecuted this appeal.

Martha Berry was seventy years of age at the time she was injured. She boarded one of the defendant's local freight trains, which also carried passengers, to go from her daughter's home in Van Buren, Ark., to her own home in Greenwood, Ark. There were nineteen cars in the train. Fifteen of these cars were empty coal cars. Two of them were merchandise cars, and two of them passenger coaches. The train stopped about two cars length before it came to its regular stopping place. Some of the passengers alighted from the coaches. Mrs. Berry arose from her seat and started to go out of the coach. Before she reached the door, the brakeman, who had got off of the train, signaled the engineer to go ahead. The train lunged forward, and Mrs. Berry was thrown down on her back.

Two or three witnesses for the plaintiff testified that the train moved up about a car's length and suddenly stopped again. One of the witnesses testified that when the train stopped the first time, Mrs. Berry got up and started to get off of the train. About the time she got to the door of the coach, the train pulled up about a car's length and then was stopped suddenly. He said that the first stop did not seem to be rough, but that the

second stop was really out of the ordinary. The train moved up about a car's length slowly and stopped rather suddenly.

Mrs. Berry was a witness for herself. She did not recall whether the station was called when they got to Greenwood. She started to get off while the train was standing still. She started out of the door of the coach and was struck in the back.

The jury might have legally inferred from this testimony that the train had come to a standstill at the station at Greenwood, and that Mrs. Berry had walked to the front door of the coach in which she was riding for the purpose of alighting from the train, and that the train was started and stopped again with a sudden jerk, which caused her to be thrown violently on her back, whereby she was injured.

It is true that the defendant adduced evidence tending to show that there was no unusual jerk in stopping the train, but it is not within our province to pass upon the weight of the evidence, and the evidence for the plaintiff was sufficient to submit the question to the jury. *St. L. I. M. & S. R. Co.* v. *Richardson,* 87 Ark. 101; and *St. L. I. M. & S. R. Co.* v. *Brabbzson,* 87 Ark. 109.

It is also insisted by counsel for the defendant that the court erred in refusing to give instruction No. 5, which is as follows: "You are instructed that if, at the time Mrs. Berry entered into a release, she knew what she was doing, your verdict must be for the defendant, although you may believe that she has since forgotten."

The court did give at the request of the defendant the following instruction: "You are instructed that, if you believe from the evidence that plaintiff and Mr. Davidson, representing the defendant, entered into an agreement whereby she released the defendant from all liability for damages, and that she accepted $100 and retained it, your verdict must be for the defendant, unless you find that she did not know what she was doing at the time."

A comparison of these instructions will show that they cover practically the same ground. The jury is told in each of them that if, at the time Mrs. Berry signed the release, she knew what she was doing, the verdict should be for the defendant.

At the request of the plaintiff, the converse of the proposition was submitted. At the request of both the plaintiff and the defendant, the law of ratification by cashing the check on another day than Sunday was submitted to the jury. The jury was plainly told that its verdict must be for the defendant unless it should find that Mrs. Berry did not know what she was doing at the time she signed the release. This was equivalent to telling it that if, at the time Mrs. Berry signed the release, she knew what she was doing, the verdict must be for the defendant, although the jury might believe that she had since forgotten the occurrence. Her right to avoid the execution of the release is predicated upon the fact that she did not know what she was doing at the time she signed it.

The jury were the judges of the credibility of the witnesses, and their belief, from the evidence, that the plaintiff had forgotten that she signed the release was included in the question of whether or not she knew what she was doing when she did sign it.

Finally, it is insisted that the evidence is not legally sufficient to warrant a finding that the plaintiff did not know what she was doing when she signed the release.

The undisputed evidence shows that the plaintiff was in a hospital controlled by the railroad company at the time the release was signed. The claim agent admits that her son-in-law, who was also an employee of the company, had requested him not to obtain her signature to a release without his presence. The claim agent says that he did not comply with her son-in-law's request because the plaintiff said that she was capable of attending to her own business, and that she knew what she was doing when she signed the release.

The claim agent is corroborated by the attending physician and the nurses, but this did not, as a matter of law, overcome the testimony given on this point by the plaintiff and her witnesses. According to her testimony, she was badly injured, suffered great pain, and did not remember anything at all about signing the release. She was kept in the hospital for ten days.

It is true that the plaintiff's own testimony that she did not remember the occurrence at all is a very general statement, but when we consider her nervous and excited condition, together with her advanced age, it cannot be said that her testimony is without weight. She is corroborated by the testimony of her daughter, who said that she visited her mother every day while she was in the hospital and that she was in a very nervous condition all the time. She stated further that her mother was out of her head for a part of the time. The plaintiff signed a release for $100, and the claim agent admits that she was contending all the time that she was badly hurt. This release did not include her hospital expenses, which amounted to $55. When all these matters are taken into consideration, it cannot be said that the evidence on this phase of the case is not legally sufficient to sustain the verdict. *Truman Cooperage Co.* v. *Crye,* 137 Ark. 293.

Finally, it is insisted that the judgment should be reversed because the court refused to grant the defendant a continuance because of surprise at the plaintiff's testimony. The alleged surprise came about in this way: the plaintiff's complaint alleged that she had been injured while alighting from the train by the negligent jerk of the train, which threw her down. Eye-witnesses of the accident testified for the plaintiff in accordance with this allegation of negligence, and told how she was injured by being thrown on her back by a sudden starting and stopping of the train while she was walking out of the coach door with a view of alighting from the train.

The plaintiff finally took the stand in her own behalf. She testified that she started out of the door of

the coach, and that another train hit her in the back, thereby causing her injury.  The defendant's attorney then moved for a continuance on the ground of surprise.  The plaintiff's attorney then announced that the plaintiff did not rely for a recovery upon the fact that she had been struck by another train, but based her right to recovery solely on the ground that she had been thrown upon her back by a sudden jerk of the train.  The case was submitted to the jury on this theory.  Indeed, the testimony is practically undisputed that the plaintiff was hurt by the train starting and stopping suddenly, thereby causing her to fall on her back.  The only dispute in the testimony on this point is whether or not the train stopped with a sudden jerk, or whether it was stopped in the usual way.  The brakeman testified that he knew the plaintiff and had told her to keep her seat until he told her to leave.  This testimony is disputed by the evidence for the plaintiff; but, as we have said, there was no dispute in the testimony about the plaintiff's being hurt by falling on her back.  All of the evidence showed she was thrown down on the platform of the coach as she walked out of its front door.  It would have been impossible for her to have been injured by another train, and we do not think there was any possibility of the jury having been misled by her testimony.

Therefore the court did not abuse its discretion in refusing to grant the defendant a continuance.

We find no reversible error in the record, and the judgment will be affirmed.