EHLERS *v.* ROSE.

Opinion delivered July 14, 1930.

*Joe T. Robinson, G. E. Morris* and *J. W. Barron,* for appellants.

*C. T. Cotham* and *Houston Emory,* for appellee.

SMITH, J. J. E. Hicks, a citizen of England, Arkansas, died testate on February 13, 1928, and by his will disposed of a large and valuable estate. Devises were made to numerous relatives, friends and charities, after which a paragraph provided that his sisters should be residuary legatees for their natural lives for all property not otherwise disposed of. This followed the recital that it was the purpose and desire of the testator "to make a complete will and disposition of all my property."

A very considerable portion of the whole estate was included in this residuary clause, a part thereof being an apartment house in the city of Hot Springs known as the Kevin Apartments, and referred to by the witnesses as the Kevin. This apartment, at the time of the testator's death, was in the possession of Mrs. Julia Rose, and when she refused, after demand, to surrender possession, a suit in unlawful detainer was brought by the executors and the sisters of the testator, the residuary legatees, to recover possession.

Mrs. Rose filed an answer and cross-complaint, in which she asserted title to the Kevin Apartments under a contract which she alleges was made with Mr. Hicks whereby he agreed to devise the apartment to her. This contract contemplated that Mrs. Rose should devote as much of her time and attention to Mr. Hicks as he might desire. A choice room was reserved in the apartment for him, and Mrs. Rose alleged and testified that it was agreed that she would become Hicks' companion when he wished, that she would nurse him when he was sick, and prepare special food at his order during his frequent visits to Hot Springs, and that she fully complied with her contract. That in view of this contract Hicks bought the Kevin Apartments, and turned it over to her. The building required renovation and repairs, which work was superintended by Mrs. Rose, and she thereafter occupied it pursuant to Hicks' agreement to devise it to her, and she testified that Hicks told her that he had made a will under which the apartment had been devised to her.

The court found the fact to be that Hicks had contracted with Mrs. Rose to devise the Kevin Apartments to her, but that it was not such a contract as the court would order to be enforced. The court further found that, in reliance upon this contract to devise, Mrs. Rose had rendered Hicks valuable services, and had improved the property, and had been induced to sell her lease on the Chicago Hotel and Cafe at a loss for the purpose of taking over the Kevin Apartments. The court charged Mrs. Rose rent on the apartment for twenty-nine months at $75 per month, but credited her with $30 per month for the room reserved for Mr. Hicks. There were twenty-three rooms in the entire apartment, in addition to the halls and bathrooms. After balancing the accounts, the court ordered the possession of the apartment to be delivered to plaintiffs, and rendered judgment for Mrs. Rose in the sum of $4,193.26. Plaintiffs have appealed, and Mrs. Rose has perfected a cross-appeal.

It is insisted that the contract which Mrs. Rose seeks to enforce, even if made, was an immoral one and contrary to public policy, and therefore void, for the reason that, although she was not living with her husband, she was, nevertheless, a married woman, and her husband, and he alone, was entitled to her consortium, and she could not contract the right thereto to another.

We do not decide this controversy for the reason that, in our opinion, the testimony fails to establish a contract to devise the apartment to Mrs. Rose. A number of witnesses gave testimony in Mrs. Rose's behalf which corroborates her contention to some extent, but only Mrs. Rose herself and two men gave testimony of a character sufficient to show that there was a contract to devise. The relation of these two men to the defendant is such that their testimony deserves but little consideration, and it is very questionable whether Mrs. Rose's testimony was admissible at all. Section 4144, C. & M. Digest.

But, pretermitting these questions, we are of the opinion that the testimony fails to establish a contract to devise. There was unquestionably a contract between the parties which induced Mrs. Rose to sell her lease of the Chicago Hotel and Cafe to assume charge of the Kevin, and, pursuant to this contract she performed services for Hicks in the way of nursing him and preparing special foods for him.

It so happens that Mrs. Rose and Mr. Hicks had a written contract in regard to the Kevin, and we think its recitals and the conduct of the parties in the discharge of its provisions negatives the idea that Hicks had given her the apartment or that he had contracted to devise it to her.

This lease contract was made on the........day of March, 1926, and provided that Mrs. Rose should pay a monthly rental "of one-half of the gross income, after the light and water bills have been deducted therefrom." Mrs.

Rose was required to furnish a monthly statement of receipts and expenses. It was further provided that "either party may terminate this contract by giving the other party fifteen (15) days' notice. In case of a sale of this property covered by this contract, the lessee will immediately vacate without any notice."

Other provisions of the contract were as follows:

"If a sale of the property is made after the expiration of twelve (12) months, but within two years from date hereof, the lessor will pay to the lessee out of the profits derived from the sale of $1,000. If a sale of the property is made after two years from date hereof, the lessee will receive one-half of the profits derived therefrom. The profits will be ascertained by deducting the purchase price paid by the vendor and the cost of any improvements made to or placed on the property from the sale price. The profits promised herein to the lessee are made with the understanding and upon the condition that she is occupying the property at the time of the sale, and the further condition that this contract shall not have been terminated. For the purpose of terminating this contract, it is not necessary that the party terminating it advance any reason or make any explanation to the other for his or her act in bringing this contract to an end. The beginning of this contract will be on April 1, 1926, at which time the leased premises will be given unto the lessee's possession.

"In witness whereof, the parties have hereunto set their hands in duplicate on the day and date first above written."

A number of remittances were made by Mrs. Rose for rent under this contract, but she later complained that the contract was unfair, in that Hicks should pay half of all the expense of operation, whereas the contract required him to pay only one-half of the light and water bills. In the voluminous correspondence between the parties set out in the record she did not appear to have made

any other complaint about the contract or to have suggested that it did not fully recite the agreement of the parties in regard to its subject-matter.

A large amount of testimony was taken as to the nature of the services rendered by Mrs. Rose and their value, but there appears in the record a letter which we think should be conclusive of this question.

Mrs. B. N. Florence, a practicing attorney at Hot Springs, testified that Mrs. Rose was referred to her by an acquaintance, and that Mrs. Rose conferred with her in regard to this controversy. She agreed to represent Mrs. Rose if the matter could be compromised and settled without litigation, and accepted employment with the understanding that she would not prosecute any litigation if this became necessary. Pursuant to this authority she wrote Mr. Hicks a letter, which the plaintiffs offered in evidence. This letter enumerated Mrs. Rose's demands, including the remodeling of the Kevin Apartments. The letter referred to the sale of the Chicago Hotel and Cafe, and concluded with the statement that a total of $1,000 was due Mrs. Rose, and demand was made for its payment. Hicks answered this letter and denied that he owed Mrs. Rose anything, and this terminated Mrs. Florence's connection with the case.

The testimony of Mrs. Florence appears to have been admitted without objection, although the introduction of the letter was objected to. Mrs. Rose testified that this letter was written without authority, but we accept as true Mrs. Florence's statement to the contrary. The objection to the letter is that it was a professional and confidential communication, and therefore privileged. We do not think so. The letter was written to Hicks, a third party, and there was no relation of attorney and client between Mrs. Florence and Mr. Hicks. *Vittitow* v. *Burnett,* 112 Ark. 277, 165 S. W. 625; *Vanness* v. *Vanness,* 128 Ark. 543, 194 S. W. 498; *Kilgo* v. *Continental Casualty Co.,* 140 Ark. 336, 215 S. W. 689; *Blackburn* v. *Blackburn,* 170 Ark. 823, 281 S. W. 391.

The letter was not objectionable as an offer of compromise. It did not propose to take less than the whole amount due in satisfaction of the demand. It stated the total amount due to be $1,000. This letter was written at a time when the relation between Mrs. Rose and Hicks had become somewhat strained and was evidently approaching the breaking point. This is evidenced by the correspondence about this time. The letter was written on the 11th day of January, and Hicks died on the 13th of the following month. There is no intimation in this letter that Mrs. Rose claimed any interest in the apartment itself, nor is there any intimation in any of the numerous letters passing between Mrs. Rose and Hicks that she claimed any interest except that evidenced by her lease.

We have carefully considered the excellent briefs which have been filed in this case, and have concluded that equity will be done by balancing accounts between Mrs. Rose and Mr. Hicks after allowing her claim as of the date of his death in the sum of $1,000, and, as she appears to have paid the 1929 taxes amounting to $143.26, she will be allowed that credit also. Against the total of these amounts, aggregating $1,143.26, she will be charged rent on the apartment at $75 from the date of Mrs. Hicks' death, as she gave bond to retain possession, and will be charged at that rate up to the date of the surrender of the possession of the apartment.

The decree awarding plaintiffs possession of the building will be affirmed.

Upon a consideration of the entire testimony, we have concluded that it would be equitable to assess the costs in the court below against plaintiffs, and those on the appeal against the defendant, Mrs. Rose.