SEARS *v.* SCOTT.

4-7903                                    197 S. W. 2d 33

Opinion delivered September 30, 1946.

Rehearing denied November 25, 1946.

*John L. Sullivan*, and *Jno. A. Hibbler*, for appellant.

*J. R. Booker* and *Philip McNemer*, for appellee.

Ed. F. McFaddin, Justice. This is a dispute between the rival factions of the Arch Street Baptist Church (Colored) in Little Rock, Arkansas, which church is congregational in its method of church government. See *Elston* v. *Wilborn*, 208 Ark. 377, 186 S. W. 2d 662, 158 A. L. R. 179. The appellant, Sears, claims to be the pastor of the church. The appellees claim to be the trustees and the representatives of the majority faction of the congregation.

On December 10, 1945, appellees filed their complaint in the Pulaski Chancery Court, alleging that at a regular meeting of the congregation on December 4th a majority had voted to immediately discharge Sears as pastor, but that he had refused to vacate the pulpit and church property. The prayer of the complaint was for an injunction. On December 17th, appellees filed their first amendment to the complaint, in which they amplified the allegations, and prayed for the same relief as in the original complaint. On December 18th, appellees filed their second amendment to the complaint, adding an additional defendant and alleging a conspiracy between the defendants to eject appellees from church membership, in order that Sears and his faction might have complete control. The prayer of this amendment was for a restraining order. On January 26, 1946, appellees filed their third amendment to the complaint, which amendment contained eight detailed charges against Sears' conduct, but contained no additional prayer for relief.

During the interims between the filing of these amendments, there were various applications for temporary restraining orders, hearings on the applications, the granting and modifying of such orders, motions to dismiss, and hearings on the same; but we find it unnec-

essary to detail these. On February 12, 1946, the defendants filed their answer which contained, *inter alia,* a general denial of all allegations.

On the same day that the defendants' answer was filed, an order was entered causing an election to be held by the church membership on the sole question of the retention of Sears as pastor. It is not claimed by anyone that any evidence was introduced at this hearing. Appellees insist that the order was by consent; but appellants claim otherwise. An examination of the order shows that in one place it recites "all of the parties having consented hereto in open court for this method of procedure for determining said issue"; but the order also shows at its conclusion that the plaintiffs agreed and consented in open court, "but the defendants (appellants here) except to said findings and pray and are granted an appeal to the Supreme Court." (parentheses our own). The quoted words show that the appellants did not agree or consent to the order, and protected themselves as best they could by preserving exceptions. The language, at the end of the order, that the defendants objected to the findings, shows that there was no consent. The very purpose of an exception is to preserve the rights of the one excepting. The language here used was sufficient under §§ 1544 and 1545, Pope's Digest.

Thus, the status of the record is: (1) no testimony is claimed to have been introduced to support the facts recited in the order; (2) any recital as to "consent" is negatived by the exception to the findings; and (3) the court called an election to settle a pending controversy.

In the said order calling the election, the court directed the time and place of the election, and appointed a moderator to hold the election, and two deputy sheriffs to attend and preserve order. The order recites:

"The only question for decision by the congregation at said time in this said election to be held as hereinbefore set out . . . is and shall be . . . the retention or non-retention of the said P. J. Sears as its pastor. That the ballots to be cast shall be printed in form as follows:

"1. For Rev. P. J. Sears ————————.

"2. Against Rev. P. J. Sears ————————."

The election was held in pursuance with said order, and the result was reported by the moderator and two deputy sheriffs as being 127 against Sears and 105 for Sears. Solely on the result of that election, as based on the report of the moderator and the deputy sheriffs, the Chancery Court entered a final decree on February 16, 1946, permanently restraining the appellants, who have duly appealed.

I. *An Election to Determine the Litigation.* We reach the conclusion that the order of the chancery court calling the election, and the decree based on the election, come squarely within the procedure interdicted in *Elston* v. *Wilborn, supra.* There, as here, a dispute arose between factions of the congregation, and the Chancery Court called an election and decided the cause solely on the result of the election. We there quoted from the Pennsylvania case of *Mazaika* v. *Krauczunas*, 229 Pa. 47, 77 At. 1102, 31 L. R. A., N. S. 686, as follows:

" 'Instead of meeting the issues raised by the pleadings, pursuant to an agreement entered into between the parties, the chancellor proceeded to hold a new election, to determine whom the majority preferred to have act as trustee of the title. . . . Here was a clear abdication of judicial function and authority. . . . It is the proper function of a chancellor to resolve such doubtful questions in the light of the evidence, not to avoid them by reaching a solution of the controversy through methods for which there is no legal warrant. . . . The decree entered in the case rests exclusively upon the result derived by the chancellor from the election held before him. Not only had the election no relation to the congregational meeting, but it was not ordered by the congregation, . . . The case must go back, to be proceeded with sec. reg., the contending parties to be allowed to introduce such testimony as they can touching the issues raised under the pleadings. From that testimony let the facts be found,

and then, should an appeal to this court follow, we will be in a position to make final ruling, but not until then.' ''

Appellees claim that the procedure in the case at bar falls within the purview of the following language found in *Elston* v. *Wilborn*:

''We do not mean that an election can never be called. If—for instance—a complaint should be filed stating that by force, threats, etc., the desire of the majority could not be ascertained, then a court could properly decree a clear election—not to decide the result of a pending case, but as granting the relief prayed, *i. e.,* a clear election.''

We cannot agree with appellees' contention. In all of their pleadings, appellees never prayed for a clear election, but, on the contrary, insisted all the time that there had been an election and that Sears refused to abide by the election. In their first amendment, appellees recited how Sears' faction had left the congregational meeting of December 4th; but appellees alleged that the meeting had proceeded and there had been a complete election. There was never any claim that judicial intervention was needed to obtain a fair election. Furthermore, the order of February 12th calling the election did not recite that it was for the purpose of securing a clear election theretofore denied. On the contrary the order recites that it was for the purpose of having an election to settle the entire controversy. The decree of February 16th specifically recited that it was based on the result of the court election. In short, the whole record in this case at bar indicates that the rule of *Elston* v. *Wilborn* was overlooked.

We try chancery cases *de novo;* and if there had been any evidence introduced in this case on which we could base a decree, we might finally dispose of this controversy. For instance: appellees alleged in their original complaint, and also in their first amendment, that the congregation on December 4th had duly and legally voted to discharge Sears. If that allegation had been substantiated by evidence, then we would be in a

position to decide this case. But, in the absence of any evidence, we must remand the controversy.

II. *Rule Nine.* The appellants' abstract was defective; and we would sustain the appellees' motion to dismiss the appeal for failure to comply with Rule Nine (of this court), except for the fact that the appellees have supplied us with an abstract and thereby waived their own motion to dismiss. In *Thomson* v. *Dierks Lumber & Coal Co.,* 208 Ark. 407, 186 S. W. 2d 425, we pointed out that the appellees in their brief on the merits might supply any deficiency in the appellants' abstract, and thereby lose the benefit of the appellees' motion to dismiss for failure to comply with Rule Nine. That eventuality has occurred in the case at bar, and so the motion to dismiss for non-compliance with Rule Nine has been waived by appellees having cured the defective abstract made by appellants.

It follows that the decree of the chancery court of February 16, 1946, is reversed, and the cause is remanded with directions to set aside the order of February 12, 1946, calling the election, and to hear such evidence as may be offered by the parties, on the merits of the controversy, and proceed in a manner not inconsistent with this opinion.

There was an order made by the chancery court in this case which restrained and enjoined P. J. Sears from officiating or acting in any capacity whatever as pastor of the Arch Street Baptist Church at 11th and Arch Streets, Little Rock, Arkansas, and which restrained and enjoined P. J. Sears from interfering with or using the said church house or properties in any way whatever. In order to maintain the *status quo* in this case, we decree the said restraining order in full force and effect until the Pulaski Chancery Court determines the cause.

The costs of the appeal in this court will be borne equally by the parties.