## ARKANSAS NATIONAL BANK *v.*
## CLEBURNE COUNTY BANK

75-19                                          525 S.W. 2d 82

Opinion delivered June 23, 1975

*Reed & Blackburn*, for appellant.

*Olmstead & Choate*, for appellee.

JOHN A. FOGLEMAN, Justice. Robert M. Edwards was formerly employed by Dr. Wayne H. Smith of Heber Springs, Arkansas, as a physician's assistant. In July and October, 1973, Edwards borrowed money from Cleburne County Bank and Arkansas National Bank, respectively, $2500 from each institution, executing a promissory note and security agreement as a part of each transaction. Each bank filed for record its financing statement or security agreement covering the same property of Edwards. Edwards failed to make payments to either bank. This appeal is from the holding of the chancery court that the security interest of Cleburne County Bank had priority over that of Arkansas National Bank, entitling Cleburne County Bank to priority with respect to the proceeds of the sale of Edwards' property being held in the registry of the court.

The single point for reversal urged by Arkansas National Bank relates to its contention raised in the trial court that the security agreement with Cleburne County Bank had been materially altered and was therefore void, or, in the alternative, should be restricted to those items included when it was originally written. The evidence on behalf of appellant

was circumstantial. In attempting to prove a circumstance supporting its contention, appellant called as a witness an attorney, Hoyt Thomas, whose client was Edwards' employer, Dr. Smith, who had previously been dismissed as a party defendant in the action. Thomas refused to give testimony with respect to information he had received from certain third parties (Mr. Johnson, president of Cleburne County Bank and Mr. Hensley, president of Arkansas National Bank) in the course of his representation of Dr. Smith; testimony that in December 1973, Thomas went to Cleburne County Bank and secured a copy of that bank's security agreement, which copy would be relevant to the alteration issue; and testimony concerning discussions Thomas had with appellant's attorney relative to the alteration issue. Thomas refused to testify on the ground that to do so would violate the attorney-client privilege, based on his relationship to Dr. Smith. The trial court sustained Thomas' refusal to testify, saying that Thomas could not be compelled to divulge anything from his files pertaining to the case without permission of Dr. Smith, which was refused. None of the subjects above mentioned fall within the ambit of the attorney-client privilege, and the trial court's ruling to the contrary was error.

The attorney-client privilege extends to any communication made to the attorney by his client in that relation, or his advice thereon. Ark. Stat. Ann. § 28-601 (Supp. 1973). Put more succinctly, the privilege covers communications between attorney and client; that is, statements of each to the other. *Norton* v. *Norton*, 227 Ark. 799, 302 S.W. 2d 78. The privilege is designed to secure subjective freedom of mind for the client in seeking legal advice, and has no concern with other persons' freedom of mind or with the attorney's desire for secrecy in the conduct of his client's business; therefore, it is not sufficient for the attorney, in invoking the privilege, to state that the information came somehow to him while acting for the client, nor that it came from some particular third person for the client's benefit. 8 Wigmore on Evidence (McHaughton Revision) 619, § 2317. The purpose of the rule and the necessity for its limitation have been clearly recognized in Arkansas and we have not extended the privilege to communications between the attorney and third parties in the course of the attorney's representation of his client. See

*Vittitow* v. *Burnett*, 112 Ark. 277, 165 S.W. 625; *Morgan* v. *Wells*, 242 Ark. 499, 415 S.W. 2d 323; *Ehlers* v. *Rose*, 182 Ark. 131, 30 S.W. 2d 849; *Kilgo* v. *Continental Casualty Co.*, 140 Ark. 336, 215 S.W. 689.

Neither information acquired by the attorney not communicated or confided to him by his client or by an agent of his client, nor acts done by the attorney, nor facts coming to his knowledge by being done in his presence, are covered by the privilege even though any of these take place during the course of his acting as attorney. *United States* v. *Goldfarb*, 328 F. 2d 280 (6 Cir., 1964); *King* v. *Ashley*, 179 NY 281, 72 NE 106 (1904); *In Re Long* v. *Siebrect*, 187 NYS 150, 196 App. Div. 74 (1921); *People* v. *Smith*, 13 Cal. App. 3d 897, 91 Cal. Rptr. 786 (1970); *State* v. *Olwell*, 64 Wash. 2d 828, 394 P. 2d 681 (1964); 97 C.J.S. 800, Witnesses § 283 d. An attorney may be required to produce papers belonging to his client where the knowledge of their existence is accessible to others or to the public, or if, as here, the client might be compelled to produce them. *Cranston* v. *Stewart*, 184 Kan. 99, 334 P. 2d 337 (1959); *Pearson* v. *Roder*, 39 Okl. 105, 134 P. 421 (1913).

It is probable that Mr. Thomas, the attorney-witness in this case, confused the attorney-client privilege with the rule applied in some jurisdictions that the attorney's work product is not subject to discovery. The two rules and the principles upon which they are based, while susceptible to confusion, are separate and distinct. See 8 Wigmore on Evidence (McNaughton Revision) 620, § 2318. It has been held, however, that an attorney's information, taken from witnesses while acting for his client in anticipation of litigation, as well as briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case, are not protected from discovery by the attorney-client privilege. *Hickman* v. *Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947); *Dupree* v. *Better Way*, 86 So. 2d 425 (Fla. 1956); *In Re Dalton's Estate*, 346 Mich. 613, 78 S.W. 2d 266 (1956).

Ordinarily, we decide appealed chancery cases here on trial de novo when the record is fully developed and we can plainly see what the rights and equities of the parties are.

*Fulwider* v. *Woods*, 249 Ark. 776, 461 S.W. 2d 581. *Rushton* v. *First National Bank*, 244 Ark. 503, 426 S.W. 2d 378. We do remand such cases when action in the chancery court has prevented the case from being fully developed. *Fulwider* v. *Woods*, supra. See also, *Sears* v. *Scott*, 210 Ark. 392, 197 S.W. 2d 33. In this case, the testimony attempted to be elicited by appellant's counsel, and excluded by the chancellor, was especially critical, as appellant was forced to rely wholly on circumstantial evidence to sustain his position that the financing statement had been materially altered. The only indication we have of what the evidence on this issue would be is appellant's attorney's proffer, but much depends on the credibility to be given to the witnesses and the weight accorded their testimony, and the cold written record is not sufficient in this respect. In addition, we can only surmise what cross-examination might reveal and appellee might have evidence in rebuttal. For these reasons, we must vacate the decree and remand the case for further proceedings consistent with this opinion.

The decree is reversed and the case is remanded.