**James R. SHELTON and Elizabeth Ann Shelton, Co-Administrators of the Estate of Coletta K. Shelton, Plaintiffs,**

v.

**AMERICAN MOTORS CORPORATION, American Motors Sales Corporation, and Jeep Corporation, Defendants.**

**Civ. No. 83–2311.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

June 21, 1985.

E.C. Gilbreath, Jones, Gilbreath & Jones, Fort Smith, Ark., for plaintiffs.

Tilden P. Wright, III, Davis, Cox & Wright, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

The instant case is a products liability action wherein plaintiffs assert various theories of liability arising from an "on-road" Jeep rollover accident in which Coletta K. Shelton, aged 16 years, plaintiffs' decedent, was killed.

From the outset this case has been plagued with a multitude of discovery disputes. These disputes, although "refereed" by this court and the United States Magistrate, have now reached a critical stage.

A detailed recital of the procedural history of the various pleadings, documents and correspondence is unnecessary for purposes of this decision.

At issue is the propriety of this court's imposition of sanctions, including default judgment, arising from the continuing refusal of Rita Burns, "in-house" counsel for American Motors Corporation, American Motors Sales Corporation (hereafter "American Motors"), and Jeep Corporation, to answer certain questions propounded to her in depositions by plaintiffs' attorney.

The salient facts are summarized below.

Plaintiffs served notices to take depositions of numerous individuals pursuant to Rule 30(a), Fed.R.Civ.P. Plaintiffs designated ten categories of specific areas to be covered in the depositions under Rule 30(b)(6). Defendants objected to the number of named individuals and various categories listed under Rule 30(b). By order, this court restricted the number of specific individuals and directed the defendants to designate a deponent in each of the ten categories.

During the depositions taken under Rule 30(b)(6), several deponents refused to answer on the basis of privilege or the "work product" doctrine.

After plaintiffs filed a motion for default judgment based upon defendants' violation of the above-mentioned order, this court assigned the discovery proceedings to the United States Magistrate.

The magistrate denied plaintiffs' motion for default judgment, but directed the defendants to allow plaintiffs to depose additional persons, including two "in-house" counsel for American Motors, including Rita Burns.

During the deposition of Rita Burns, taken on October 24, 1984, she purportedly invoked the "work-product" doctrine and the attorney-client privilege persistently throughout, particularly with regard to the existence of various documents. One such document, the existence of which plaintiffs inquired, is a possible list of lawsuits in which there is listed all cases nationwide involving Jeep CJ overturns (First Burns Deposition, Oct. 24, 1984, pp. 38–39).

Another question concerned whether anyone in defendants' legal department reviews television advertisements, operators' manuals or salesman's guides (First Burns Dep., p. 52).

Rita Burns similarly refused to disclose the existence or non-existence of any documents, films, prints or memoranda wherein directives are issued for these items not to be disclosed in a Jeep overturn case (First Burns Dep., p. 55).

Ms. Burns also refused to disclose whether the defendants maintain any documents reflecting tests or demonstrations concerning Jeep CJ vehicles with reference to their rollover propensity, other than the "Penrod test," the "Milliken-Rice test," the "1982 Sneva-Haberstat test," the "Heitzman Pocabella test," and what is referred to as "C1109," "C1096" and the "C1216 series," which were disclosed in answers to interrogatories (First Burns Dep., pp. 55–56).

Plaintiffs also inquired of any tests performed by SEA in Columbus, Ohio, or Tri-Dyne, or anyone else. Ms. Burns persisted in her refusal to answer (First Burns Dep., p. 57).

Plaintiffs inquired of the existence of documents or video cassettes concerning the Jeep Celebrity Challenge Races (First Burns Dep., p. 61).

Ms. Burns was also asked about the existence of documents concerning any computer modeling of the Jeep CJ vehicle (First Burns Dep., pp. 63–64). She refused to answer these questions as well.

Ms. Burns refused to reveal the existence or non-existence of documents reflecting Jeep rollovers and injuries to persons wearing seat belts (First Burns Dep., p. 64), the existence or intentional destruction of a 16-millimeter film of the "McCord test" (First Burns Dep., p. 65), the existence of any contract between defendants and Dynamic Science (First Burns Dep., pp. 65–66), the existence of any design drawing of the entire Jeep CJ vehicle (First Burns Dep., p. 68), and the existence of documents concerning statistical tabulations of utility vehicles in rollover accidents (First Burns Dep., p. 70). Ms. Burns answered none of these questions, in addition to numerous others.

Following this deposition, plaintiffs moved for a default judgment on the basis of an asserted non-compliance with the court's prior order. The magistrate denied this motion, but ordered Ms. Burns to appear in Fort Smith, Arkansas, to give her deposition so that the magistrate could consider each question and answer and determine the applicability of any asserted privileges.

Ms. Burns did appear for that purpose on January 28, 1985. During this deposition Ms. Burns again refused to divulge the existence of any documents, other than the "Renifer documents," in which there are computations, diagrams, or charts which reflect an analysis of the rollover tendency of the Jeep CJ vehicle (Second Burns Deposition, Jan. 28, 1985, p. 15). She persisted in her refusal despite the order of the magistrate to respond (Second Burns Dep., p. 28). Ms. Burns exercised a similar refusal with regard to the existence of any documents pertaining to any intentional destruction of the 16-millimeter "McCord" film (Second Burns Dep., p. 81), as well as any knowledge of the current location of 35,000 documents which recently "surfaced" with reference to the "Foreman"

case (Second Burns Dep., p. 91), despite the orders of the magistrate to respond.

She stated that her refusals to respond were based upon the direct instruction of American Motors.

Subsequent to the deposition, the magistrate, by letter to this court dated January 29, 1985, recommended a "show cause" hearing, directing the defendants to show cause why Ms. Burns should not be held in contempt of this court and, further, why a default judgment should not be entered on the issue of liability in favor of plaintiffs. The magistrate recommended that defendants be given one last opportunity to purge themselves of contempt.

This court entered an order on March 5, 1985, directing Ms. Burns to fully respond to the questions concerning the "existence" of documents in defendants' possession on or before March 15, 1985, or to appear on that date to show cause why Ms. Burns should not be held in contempt and why sanctions, including default judgment, should not be entered. Prior to March 15, 1985, defendants and Ms. Burns advised the court that they would not comply, but rather, would "stand" on their position as stated in the depositions.

On March 22, 1985, plaintiffs moved this court to enter a default judgment against the defendants on the issue of liability. Defendants have responded and the issues are ripe for resolution.

With regard to the asserted attorney-client privilege and work product doctrine, the magistrate advised Ms. Burns and the defendants that he felt the matter was controlled by *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir.1977), and *Arkansas Nat'l Bank v. Cleburne County Bank*, 258 Ark. 329, 525 S.W.2d 82 (1975). Relying upon *Meredith*, the magistrate advised defendants that the five-part test set forth therein must be applied to determine the applicability of the privilege. That test requires, in order to be privileged, that (1) the communication was made for the purpose of securing legal advice; (2) the employee must make the communication at the direction of his corporate superior; (3) the superior must make the request in order that the corporation could secure legal advice; (4) the subject matter of the communication must be within the scope of the employee's corporate duties; and (5) the communication must not be disseminated beyond those persons who, because of the corporate structure, needed to know its contents.

With regard to the existence of the various documents, the magistrate quoted from *Arkansas Nat'l Bank v. Cleburne County Bank, supra:*

> An attorney may be required to produce papers belonging to his client where the knowledge of their existence is accessible to others or to the public or if ... the client might be compelled to produce them.

In that case the Arkansas Supreme Court said further:

> It is not sufficient for the attorney, in invoking the privilege, to state that the information came somehow to him while acting for the client.

*Arkansas Nat'l Bank v. Cleburne County Bank* 258 Ark. at 331, 525 S.W.2d 82.

■ In other words, the mere fact that the documents or knowledge of the documents came to the attorney while acting for the client is not sufficient to invoke the privilege.

In this regard it appears that defendants have merely contended that deposing Ms. Burns was not an appropriate method for plaintiffs to secure the information sought. Ms. Burns was asked, by defendants' trial counsel, the following questions:

Q. And is it your contention today that the attorney or an attorney for American Motors Corporation actively involved in litigation is therefore not an appropriate vehicle for this discovery to take place?

A. Yes it is.

(Second Burns Dep., Jan. 25, 1985, p. 28.)

She further stated:

A. Judge, I agree he's entitled to ask it in the appropriate form (forum?).

The problem is that the form which he is trying to choose places, in my judgment, an intolerable burden on the system. It's the same as if he decides to depose Mr. Wright (trial counsel) and Mr. Wright decides to depose him ...

(Second Burns Dep., p. 40.)

The magistrate stated to the defense attorneys:

... there is no law anywhere, which I'm aware, that says one lawyer can't depose another lawyer ... I can't find any law anywhere that says that can't be done....

(Second Burns Dep., p. 41.)

To which defendants' trial counsel responded:

Your Honor, if we could we wouldn't be here today. We would have already produced the cases for you ...

*Id.*

Trial counsel for defendants reiterated his position later in the same deposition:

... one of the difficulties that we experience, and it is strictly unique is the fact that there is an attorney being deposed instead of a member of management or someone else from American Motors Corporation ... [O]ur position has to be that this particular line of questioning as directed to an attorney is improper. That the information sought ... is readily available from other sources within the corporation....

(Second Burns Dep., p. 59.)

It is clear that the primary thrust of defendants' position with regard to admitting or denying the existence of documents is that such information came to Ms. Burns while acting for the client:

Basically our position will be as stated by Mrs. Burns, that the things she has come to know about as a result of her relationship with her client as an attorney ... that she feels is appropriately addressed to the client and not to her ...

(Second Burns Dep., p. 44, statement of trial counsel for defendants.)

■ Although defendants did make some objections on the purported basis of the attorney-client privilege and work-product doctrine, it appears that the law is clear that neither objection can properly bar inquiry into Ms. Burns' mere knowledge of the existence of the documents. *Arkansas Nat'l Bank v. Cleburne County Bank, supra; Diversified, supra;* Ark.Stat.Ann. § 28–1001; Rule 502, Ark.Unif.R.Evid.

As Professors Wright and Miller note: Rule 26(b)(3) provides protection only for "documents and tangible things." There is a distinction, noted in the *Hickman* case itself, between documents that a party has assembled and the facts he has learned from those documents. The courts have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery. This will continue to be true under Rule 26(b)(3).

Wright & Miller, *Federal Practice and Procedure: Civil* § 2023 at 194, 196. *See* cases collected at footnotes 16 and 17 of § 2023.

Not only does this appear to be clearly the law, defendants conceded that there are no cases to support their position (Second Burns Dep., p. 41).

The conclusion is inescapable that Ms. Burns repeatedly refused to comply with explicit directives of the magistrate and this court, after being fully advised as to the concurring views of the magistrate and this court as to the applicable law, and after having several full and complete opportunities to express her position and provide legal support for her contentions. Defendants were repeatedly warned that sanctions would be imposed if they persisted in their refusal to comply. As the magistrate advised them:

... [Y]ou're entitled to occupy that position as long as you're willing to, as the

saying goes, put your money where your mouth is and bear the consequences, ... if you're wrong.

(Second Burns Dep., p. 46.)

The court finds that the repeated refusal of Ms. Burns to comply with the lawful orders of this court upon the advice and direction of trial counsel and her employers constitutes a willful contempt of this court for which sanctions should be imposed.

In their reply to plaintiffs' motion for default judgment, defendants state:

... [d]efendants' position on the attorney-client privilege and work product doctrine is not taken to thwart plaintiffs' discovery efforts, but is taken with the earnest conviction that those privileges were and are properly applicable to the questions asked of AMC's staff attorney. Defendants' position is supported by case precedent, as well as by public policy.

Defendants cited no case precedent in either of the depositions of Ms. Burns, although it would seem that the same would have been excellent opportunities in which to do so. That they did not was explained by their trial counsel's comment to the effect that they "would have if they could have." Similarly, defendants could have pointed out to this court any favorable precedent or argument in response to this court's order to show cause. Instead, defendants chose to rely upon their position as set forth in the two depositions of Ms. Burns.

Defendants assert that their position is supported by "public policy" and that they, therefore, could not have acted in "bad faith."

Exactly why public policy would support an officer of the court in a willful refusal to disclose the mere *existence* of documents in violation of direct orders of this court is not stated.

If defendants honestly believed that their "position" and refusal are shielded by legal precedent, then obviously it devolved upon them to make a good faith argument to this court upon request. Instead, defend-

ants remained "mute" in response to the "show cause" order. The court is more than satisfied that there is sufficient bad faith involved to warrant significant sanction.

Defendants appear to have adopted the attitude that their interests are better served by refusing to comply with this court's directives. Therefore, it is incumbent upon this court to fashion an appropriate sanction which will sufficiently impress upon the defendants the need to obey directives of the judicial branch of government inherent in the American system of jurisprudence and the modern process of discovery procedures.

Sanctions this court may impose are listed in Rule 37(b)(2):

(2) **Sanctions by court in which action is pending.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f) the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order

treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35(a) requiring him to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that he is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The court has previously determined that the defendants are in contempt of this court, pursuant to Rule 37(b)(2)(D).

Subdivision (b)(2)(A) is largely inapplicable and inadequate, as an order designating that the documents of which plaintiffs inquired do in fact exist would be of little benefit to plaintiffs in the absence of any demonstration of the contents of those documents.

Likewise, it is impossible for the court to ascertain to what claims of the plaintiffs or defenses of the defendants the documents would pertain with any degree of certainty, pursuant to subsection (b)(2)(B). Subdivision (b)(2)(E) is clearly inapplicable.

Subsection (b)(2)(C) contains two sanctions possibly applicable to this case: the entering of an order striking out defendants' pleadings or parts thereof, and the rendering of a judgment by default against the defendants.

In *Watson v. C.I.R.*, 690 F.2d 429 (5th Cir.1982), the court upheld the district court's dismissal of plaintiff's action wherein the dismissal was based upon the plaintiff's failure to comply with a discovery order on the asserted basis of a privilege which the district court had rejected.

It is generally accepted that dismissal of a claim or the entering of a judgment by default requires bad faith, willfulness, or other fault. *Dunn v. TransWorld Airlines, Inc.*, 589 F.2d 408 (9th Cir.1978). Where a willful failure to comply with a discovery order significantly hampers the opposing party's trial preparation, a judgment by default is proper. *Hindmon v. National-Ben Franklin Life Ins. Corp.*, 677 F.2d 617 (7th Cir.1982). *See also Barta v. Long*, 670 F.2d 907 (10th Cir.1982); *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660 (5th Cir.1981).

It has been held that even deliberate *partial* compliance with a discovery order will justify the striking of a defendant's pleadings and the imposition of a default judgment. *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir.1976).

Defendants rely heavily upon *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989 (8th Cir.1975), for the proposition that specifically demonstrated prejudice to the discovering party is required to justify the entering of a default judgment. However, analysis of that decision clearly reveals that the court's discussion in that regard was limited to sanctions imposed under Rule 37(d) rather than under Rule 37(b). In *Studebaker*, the party seeking discovery had never sought a court order to compel discovery.

The court therein made clear that:

Fed.R.Civ.P. Rule 37(b) provides comprehensively for sanctions for failure to obey discovery orders. It has no application if there has not been a court order (citation omitted).

*Studebaker* at 994.

The court distinguished the different requirements for sanctions under subsections (b) and (d):

The provisions of Rule 37(d) ... do not apply when the failure to comply is anything less than a total failure to respond (citations omitted). If a response is made, but some questions not answered or are evasive or incomplete, a motion

under Rule 37(a) to compel answers is the proper remedy.... Similar rules apply to discovery by deposition (citation omitted). In other words, Rule 37(d) sanctions are proper only where there has been a complete or nearly total failure of discovery (citation omitted). Such is not the case here.

*Id.* at 995.

The court in *Studebaker* found the requisite "total noncompliance" lacking. Therefore, absent proof of what specific evidence was not obtained or how the absence of such evidence would impair the ability to establish the defendants' case, the imposition of a default judgment against plaintiffs on defendants' counterclaim was held to be error.

That is not the case here. In *Studebaker* it was held that there must be a total failure to respond in order to justify the severe sanctions sought under 37(d). This is doubtlessly true because where there is no court order, the responding party's conduct is not so flagrant as to justify a default, in the absence of specific prejudice to the requesting party, unless there is a total failure to respond.

However, where, as here, there are repeated refusals to comply with discovery orders, both before the magistrate during deposition and before this court in connection with the "show cause" order, the requirement of specifically demonstrable prejudice with regard to the "cruciality" of the matters involved is not as stringent.

In the situation presented here, it would be difficult for plaintiffs to demonstrate the "cruciality" of the documents involved, inasmuch as plaintiffs were unable to obtain even a confirmation of their existence, much less acquire information as to their contents. Where repeated refusals to comply with court orders are involved, vindication of the court's authority and deterrence are legitimate objectives. The fact that the instant case concerns Rule 37(b) rather than 37(d) makes it distinguishable from *Studebaker.* In *Studebaker* the court acknowledged this:

... if it is demonstrated at the trial that plaintiffs continue to refuse without adequate excuse to provide evidence, *the court can then take such action as it deems appropriate. See Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909) (emphasis added).

*Studebaker* at 996.

Although defendants argue that the information sought was available to plaintiffs through other avenues, having considered the materials submitted by the parties, the court concludes that such attempts were made and were relatively unsuccessful. The court is satisfied that defendants have "played games" with the federal discovery process in the course of Jeep CJ rollover litigation. To cite some minor examples, the court notes that defendants' engineers have repeatedly objected to various questions, contending that they do not understand such plain English terminology as "propensity to roll over." However, "Renneker documents" later showed that Renneker used similar terminology in studies and prepared charts entitled "Relative Rollover Tendency" of Jeep CJ–5, CJ–7, and CJ–8 vehicles.

Another example indicates that defendants have disguised rollover testing as "tire tests" and falsely denied initially that any written documentation of those tests were made.

It appears to the court, although it is denied by defendants, that defendants seek to claim exemption from discovery by the mere expediency of "hiding" documents in their legal department, and having its counsel refuse questioning on the asserted ground that because staff counsel's information as to those documents was acquired in his or her role as an attorney, counsel is somehow exempt from discovery.

Neither the court nor the magistrate has been able to find any support for this position, and as noted, nor could defendants in the course of the second Burns deposition.

Counsel of the caliber of those involved herein know, or should know, what is gen-

erally discoverable and what is not. · More importantly, they are well aware of that that is essential to the fair administration of justice. Defendants have infringed upon the rights of the plaintiffs to obtain information about their claim and have defied this court without a "shred" of authority for so doing.

Suffice it to say that the court finds that the entering of a default judgment in favor of plaintiffs on the issue of liability is warranted, and is within the "narrow" range of discretion of this court. *Studebaker* at 993.

By order dated March 7, 1985, this court awarded plaintiffs an attorney's fee for attending the depositions of Ms. Burns and work performed relating to the contempt of court proceedings, the amount of which was to be determined upon application. That application has now been made without objection and the court finds that plaintiffs' attorney is entitled to the sum of $5,934.58 as costs and fees incurred in connection therewith.

A separate judgment in accordance with the foregoing will be concurrently entered.