Michael Wayne BYRD *v.* STATE of Arkansas

CR 96-48                                          929 S.W.2d 151

Supreme Court of Arkansas
Opinion delivered September 23, 1996

*Scott E. Smith* and *Jeff Duty*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Michael Wayne Byrd was convicted of driving while intoxicated, Ark. Code Ann. § 5-65-103 (Repl. 1993), in the Prairie Grove Municipal Court on May 17, 1993. He appealed his conviction to the Washington County Circuit Court, and in a *de novo* trial he was convicted on the basis of a verdict reached by a six-person jury. Mr. Byrd appealed to this Court, which, in an opinion announced on July 18, 1994, held unconstitutional the statute authorizing six-person juries and reversed and remanded the case for a new trial. *Byrd* v. *State*, 317 Ark. 609, 879 S.W.2d 434 (1994). The case was again dismissed by the Circuit Court. We must again reverse and remand because the decision of the Circuit Court to dismiss was based upon testimony taken in violation of the attorney-client privilege.

After the case was remanded for a *de novo* trial, the trial in the Circuit Court was set for April 27, 1995, with a pretrial hearing to be held April 25, 1995. Attorney Doug Norwood appeared before the Court on behalf of Mr. Byrd on April 25, but Mr. Byrd did not appear. Although there is no April 25, 1995 order dismissing the case in the record, we learn from later motions appearing in the record that it was in fact dismissed on that date, apparently for failure of Mr. Byrd to prosecute his case.

On January 9, 1995, Mr. Norwood had asked to be allowed to withdraw from representing Mr. Byrd. Mr. Byrd then obtained other counsel who moved to set aside the dismissal. That motion was granted June 1, 1995, as was Mr. Norwood's request to withdraw. The case was set for trial on July 20, 1995.

Mr. Byrd moved to dismiss for lack of a speedy trial pursuant to Ark. R. Crim. P. 28.1 on the ground that the trial was not held within one year from July 18, 1994, the date of this Court's decision reversing the first Circuit Court judgment. At a hearing on that motion held July 19, 1995, the Circuit Court questioned whether the speedy-trial rule required trial within one year from the date this Court's decision was delivered or from the date our mandate issued, which was August 5, 1994, or perhaps from the date our mandate was received by the Circuit Court, August 10, 1994. Counsel for Mr. Byrd decided to stand on the speedy-trial motion and brief, and the hearing proceeded.

The State presented testimony by Mr. Norwood and his secretary, Ms. Worbington, concerning their relationship with Mr. Byrd and their unsuccessful attempts to communicate with him concerning his case. Mr. Norwood testified that Mr. Byrd owed him money and that he had attempted to contact Mr. Byrd to discuss the hiring of a drug-recognition expert and another drug expert to contradict the testimony of the arresting officer at his trial. Presented as exhibits were six letters from Mr. Norwood to Mr. Byrd in which Mr. Byrd was informed of the urgent need that he consult with Mr. Norwood about his case. In a letter written after the remand of the case, urging Mr. Byrd to communicate, Mr. Norwood informed Mr. Byrd there was an "upcoming trial" in which he might receive a year in jail. Mr. Norwood began his testimony by saying that he had not notified Mr. Byrd of a trial date in the case, but he wanted Mr. Byrd to come to his office to discuss it.

When the State called Mr. Norwood to the witness stand, counsel for Mr. Byrd objected that any communication between Mr. Norwood and Mr. Byrd during the time Mr. Norwood represented Mr. Byrd would be subject to the attorney-client privilege. The objection was overruled as were later objections to the retained copies of letters from Mr. Norwood to Mr. Byrd introduced by the State. In response to the initial objection, the Court stated, in part, that Mr. Norwood's testimony had a substantial bearing upon the speedy-trial issue.

When Ms. Worbington was called to the witness stand, an objection was made on the ground that her prospective testimony would relate to matters falling within the attorney-client privilege. She testified about attempts to communicate with Mr. Byrd and a telephone conversation she had with him on that subject.

At the conclusion of the hearing, the Court ruled that there had been no violation of Rule 28.1. The Court said further:

> The case was reinstated primarily because I was at least given the notion or led to believe by Mr. Byrd's present attorneys that he had made efforts to perhaps contact Mr. Norwood or communicate with Mr. Norwood. And I felt, in all fairness, he ought to be given a hearing at least on that issue. And, of course, Mr. Byrd was not present during that informal discussion with the attorneys, so I reinstated the case.
>
> Well, it's clear to me that was a mistake, that the case should never have been reinstated after hearing this proof today. So it will be the order of the Court that I'm going to once again dismiss the appeal. Mr. Byrd made absolutely, as I've already observed, made absolutely no effort to communicate with Mr. Norwood or Mr. Norwood's office. I think he has an obligation to do that or had an obligation. He's now had an opportunity to be heard on that issue and has elected not to testify or controvert Mr. Norwood's statements. And it's clear to me that the case should have never been reinstated and so I'm going to simply, once again, dismiss the appeal.

Perhaps the State's motive for introducing the testimony of Mr. Norwood and Ms. Worbington was to show that Mr. Byrd had made himself unavailable for trial for a period of time which could be excluded from the one-year period set by Rule 28.1. Rule 28.3 provides for the exclusion as follows:

> (e) The period of delay resulting from the absence or unavailability of the defendant. A defendant shall be considered absent whenever his whereabouts are unknown. A defendant shall also be considered unavailable whenever his whereabouts are known but his presence for the trial cannot be obtained or he resists being returned to the state for trial.

While we have serious doubt whether a defendant's refusal to communicate with his attorney has any bearing upon his unavailability for trial as described in Rule 28.3, it is clear that it was Mr. Byrd's refusal to communicate with Mr. Norwood that convinced the Court to dismiss the case.

## Attorney-client privilege

We agree with Mr. Byrd's argument that the testimony of Mr. Norwood and Ms. Worbington should not have been admitted in evidence. The privilege is stated in Ark. R. Evid. 502(b).

> General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself ... and his lawyer ....

We have said that the attorney-client privilege "is designed to secure subjective freedom of mind for the client in seeking legal advice." *Arkansas Nat'l Bank* v. *Cleburne County Bank*, 258 Ark. 329, 331, 525 S.W.2d 82 (1975). We agree that "the privilege has played the important role of protecting the private bond of trust between attorney and client and upholding the honor and dignity of the lawyer." 2 MUELLER & KIRKPATRICK, FEDERAL EVIDENCE § 181, at p. 302 (2d ed. 1994). "Without the privilege, clients would be deterred from seeking legal assistance in the first instance or at least inhibited from making full and candid disclosure of the relevant facts bearing upon their case." *Id.* § 181, at p. 302-03.

Although the privilege is designed to encourage full disclosure by the client to his lawyer, the privilege is not a "one-way one." 1 MCCORMICK ON EVIDENCE § 89, at p. 326 (4th ed. 1992). The attorney-client privilege extends to statements made by the attorney *and* the client, "each to the other." *Norton* v. *Norton,* 227 Ark. 799, 302 S.W.2d 78 (1957); *Kinkead* v. *Union National Bank,* 5 Ark. App. 4, 907 S.W.2d 154 (1995). Communications by an attorney to his client are protected, including "self-initiated attorney communications intended to keep the client posted on legal developments and implications." *Jack Winter, Inc.* v. *Koratron Co.*, 54 F.R.D. 44, 46 (N.D. Cal. 1971). *See Burlington Industries* v. *Exxon Corp.*, 65 F.R.D. 26, 37 (D. Md. 1974). In the *Norton* case, we pointed out that absent the testimony by a lawyer with respect to privileged matter the case would not have been decided as it was. The same is true here.

The State contends that the information given by Mr. Norwood and Ms. Worbington and the letters did not reveal any confidential communications. Although the communications were somewhat mundane, we hold they fell within the rubric "confiden-

tial." According to Ark. R. Evid. 502(a)(5), a communication is confidential if it is "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." We have no doubt that, during Mr. Norwood's representation of Mr. Byrd, neither of them intended to have the information about Mr. Norwood's case strategy or the problem about communication aired to third parties. Mr. Norwood's testimony was about advice to Mr. Byrd given to facilitate rendition of legal services to him, and thus it was privileged. *McCrory* v. *Johnson,* 296 Ark. 231, 755 S.W.2d 566 (1988).

■ The State also suggests that the testimony of Mr. Norwood and Ms. Worbington was non-privileged under the exception at Ark. R. Evid. 502(d)(3). That provision states that an otherwise privileged communication is admissible if it is "relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer." As the commentators have said, "[b]reach of duty by the attorney usually involves professional malpractice, incompetence, or ethical violations, while a breach by a client usually means not paying a fee." MUELLER & KIRKPATRICK, *supra,* § 196, at p. 375. The State may not invoke this exception. The only issue before the Circuit Court was whether the State had violated Mr. Byrd's right to a speedy trial. Whether Mr. Byrd and Mr. Norwood had breached a duty to each other was not an issue in the hearing or in any manner relevant to Mr. Byrd's motion to dismiss. The exception therefore does not apply.

We reverse the dismissal order and remand for proceedings consistent with this opinion.

Reversed and remanded.

GLAZE and CORBIN, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. I am concerned with the far-reaching effects of the majority opinion's broad definition of "confidential communication," and for this reason I respectfully dissent. It appears that the majority is accepting the appellant's argument that it is not the substance of the communication that matters, but the way in which it is communicated or the messenger who communicates it. This directly contradicts the plain meaning of Rule 502 of the Arkansas Rules of Evidence which protects the

client only from the disclosure of *confidential* communications. Rule 502 further provides that confidential communications are those not intended to be disclosed to third persons. The information elicited from Mr. Norwood and his secretary was not confidential in nature, as it did not concern the appellant's substantive case nor his guilt or innocence of the charge.

To the contrary, much of what was testified to had already been disclosed to third persons and was also of public knowledge. Specifically, the trial court acknowledged that prior to the hearing on the motion to dismiss, the court had discussed with Mr. Norwood the situation regarding the appellant's failure to appear at the previously scheduled pretrial hearing. The trial court also pointed out that the bases for Mr. Norwood's anticipated testimony was contained in the motion to withdraw from appellant's case which was on file with the clerk's office. How can it be said, then, that merely because this information was now coming from the mouth of Mr. Norwood that it was magically transformed into a confidential communication? Furthermore, even the fact that the State had previously secured testimony of an expert witness at appellant's first trial was also public knowledge. Likewise, the testimony by Mr. Norwood concerning his general desire to counter any expert witness employed by the State with one of his own, was not information of a confidential nature, as it merely reflected the nature of the crime with which the appellant was charged without disclosing any particulars of the merits of the case.

I fear that the majority's decision in this case will have a chilling effect on the day-to-day practice of law and the relationship between trial courts and attorneys. Attorneys may now be reluctant to offer any candid explanation to the trial court as to his or her client's absence for a scheduled court date, even if it would be beneficial to the client, as such information may later be construed as confidential. Given the majority's construction of the attorney-client privilege, attorneys may now feel that they are forced to choose between their duties of refraining from revealing potentially confidential information to the court and their duty to be candid and honest with the court as officers of it.

I am equally concerned about the message this opinion sends to criminal defendants that they have no obligation to stay in contact with their attorneys during the course of defending their cases. A criminal defendant need only avoid contact with his attor-

ney, lay low for a year or so, fire the attorney, hire another attorney, and promptly file a motion to dismiss for violation of his right to speedy trial. In light of the majority's decision, it is unclear what recourse the State would have in such a situation. What is clear in this case, however, even without viewing the substance of the written communications, is that this appellant intended to manipulate the system by causing these delays, and it is equally clear that he succeeded.

GLAZE, J., joins in this dissent.